**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| ANTHONY SCHOBERT, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:19-cv-00076- |
| | ) | MRB |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CSX TRANSPORTATION, INC.'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS, MOTION FOR SUMMARY**
**JUDGMENT, AND/OR MOTION TO STAY**

Lindsay M. Cogley
JONES DAY
325 John H. McConnell Boulevard,
Suite 600
Columbus, Ohio 43215-2673
Telephone: (614) 281-3887
Facsimile: (614) 461-4198
lcogley@jonesday.com

Donald J. Munro (admitted *pro hac vice*)
Thomas R. Chiavetta (admitted *pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
dmunro@jonesday.com
tchiavetta@jonesday.com

*Attorneys for Defendant CSX Transportation, Inc.*

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT .................................................................................................. 1

BACKGROUND .................................................................................................................... 5

    A.    The Parties ............................................................................................... 5

    B.    CSXT's Disciplinary Procedures ............................................................ 5

    C.    CSXT's T&E Staffing Procedures .......................................................... 6

    D.    CSXT's Point-Based Attendance Policy ................................................ 7

    E.    CSXT's Calculation of FMLA Leave Usage .......................................... 7

    F.    Plaintiffs' Allegations ............................................................................ 8

ARGUMENT ........................................................................................................................ 9

I.    CSXT is Entitled to Judgment on the Pleadings ............................................ 9

    A.    Plaintiffs Fail To State a Claim Under ERISA ..................................... 10

    B.    Plaintiffs Fail To State a Claim Under the Rehabilitation Act ............. 13

        1.    Plaintiffs Do Not Adequately Allege That They Are Disabled .............. 13

        2.    Plaintiffs Do Not Adequately Allege That They Were Disciplined Because Of A Disability ....................................................... 15

        3.    Plaintiffs Do Not Adequately Allege CSXT Made A Disability-Related Inquiry .................................................................. 16

    C.    Plaintiffs' FMLA Class Claims Are Improperly Pled Under Federal Rule 23 ............................................................................................................. 18

II.    Plaintiffs' Other Claims Should be Dismissed on Summary Judgment ......................... 19

    A.    As a Matter of Law, CSXT's Attendance Policy Does Not Violate the FMLA ..................................................................................................... 19

    B.    As a Matter of Law, CSXT's Guarantee Policy Does Not Violate the FMLA ..................................................................................................... 21

    C.    CSXT Applies a Lawful Approach to Calculating Employees' Use of FMLA Leave ......................................................................................... 23

    D.    The Railway Labor Act Precludes Plaintiffs' Discipline Claims ......................... 25

III.    If Not Dismissed, Plaintiffs' Claims Should be Stayed ................................................ 28

CONCLUSION ..................................................................................................................... 32

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbott v. Pipefitters Local Union No. 522 Hosp., Med., and Life Benefit Plan*,
   94 F.3d 236 (6th Cir. 1996) ....................................................................................10

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
   280 F.3d 619 (6th Cir. 2002) ..................................................................................19

*Acquaire v. Canada Dry Bottling*,
   906 F. Supp. 819 (E.D.N.Y. 1995) ........................................................................31

*Allen v. City of Jackson, Tenn.*,
   590 F. App'x 490 (6th Cir. 2014) ...........................................................................19

*Andrews v. Louisville & N.R.R.*,
   406 U.S. 320 (1972)................................................................................................25

*Arbogast v. CSX Corp.*,
   831 F.2d 290 (4th Cir. 1987) (*per curiam*) ...........................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................9

*Bailey v. Pregis Innovative Packaging, Inc.*,
   600 F.3d 748 (7th Cir. 2010) ............................................................................19, 20

*Bell v. CSX Transp., Inc.*,
   Case No. 1:18-cv-00744-JKB (D. Md. Nov. 19, 2018).........................................30

*Blomer v. Nw. Airlines, Inc.*,
   401 F.3d 935 (8th Cir. 2005) ..................................................................................25

*Boker v. Sec'y, Dep't of Treasury*,
   No. 07–00446, 2009 WL 3199074 (S.D. Ohio Sept. 29, 2009)..............................15

*Bracken v. DASCO Home Med. Equipment, Inc.*,
   No. 1:12–CV–892, 2013 WL 3275479 (S.D. Ohio Jun. 27, 2013) ........................13

*Clary v. Sw. Airlines*,
   No. 3:07-cv-0126, 2007 WL 4947690 (N.D. Tex. Dec. 17, 2007)....................3, 18

*Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n,*
    491 U.S. 299 (1989)................................................................................25

*Davis v. CEVA Logistics,*
    No. 1:12–cv–351, 2013 WL 434051 (S.D. Ohio Feb. 5, 2013)...........................................2, 13

*Doe v. BlueCross BlueShield of Tenn., Inc.,*
    No. 2:17-cv-02793, 2018 WL 3625012 (W.D. Tenn. July 30, 2018)....................................15

*Dyer v. Ventra Sandusky, L.L.C.,*
    317 F. Supp. 3d 953 (N.D. Ohio 2018)........................................................................3, 19, 20

*Dytrt v. Mountain States Tel. & Tel. Co.,*
    921 F.2d 889 (9th Cir. 1990) ................................................................................10, 12

*Ebright v. City of Pickerington,*
    No. 2:16-cv-378, 2018 WL 1512280 (S.D. Ohio Mar. 27, 2018) ..........................................14

*Emswiler v. CSX Transp., Inc.,*
    691 F.3d 782 (6th Cir. 2012) ................................................................................25

*Everett v. USAir Group, Inc.,*
    927 F. Supp. 478 (D.D.C. 1996) ................................................................................29

*Felt v. Atchison, Topeka & S.F. Ry.,*
    60 F.3d 1416 (9th Cir. 1995) ................................................................................25

*Flowers v. McCartney,*
    No. 4:17CV00604, 2019 WL 138661 (E.D. Ark. Jan. 8, 2019) .............................................22

*Fritz v. Charter Twp. of Comstock,*
    592 F.3d 718 (6th Cir. 2010) ................................................................................9

*Fry v. Airline Pilots Ass'n,*
    88 F.3d 831 (10th Cir. 1996) ................................................................................26

*Gaglioti v. Levin Grp., Inc.,*
    508 F. App'x 476 (6th Cir. 2012) ................................................................................10

*Gonzalez v. S. Pac. Transp. Co.,*
    773 F.2d 637 (5th Cir. 1985) ................................................................................29

*Gore v. Trans World Airlines,*
    210 F.3d 944 (8th Cir. 2000) ................................................................................25

*Hawaiian Airlines v. Norris,*
    512 U.S. 246 (1994) ................................................................4, 25, 26

*Henegar v. Banta,*
    27 F.3d 223 (6th Cir. 1994) ...........................................................27

*Hensley Mfg. v. ProPride, Inc.,*
    579 F.3d 603 (6th Cir. 2009) ...........................................................9

*Hunter v. Sec'y of U.S. Army,*
    565 F.3d 986 (6th Cir. 2009) ...........................................................9

*Jefferson v. Time Warner Cable Enters. LLC,*
    584 F. App'x 520 (9th Cir. 2014) ....................................................22

*Johnson v. Fresh Mark, Inc.,*
    337 F. Supp. 2d 996 (N.D. Ohio 2003), *aff'd,* 98 Fed. App'x 461 (6th Cir. 2004) .........................................................................................13

*Jones v. STOA Int'l/Fla., Inc.,*
    422 Fed. App'x 851 (11th Cir. 2011) ..............................................13

*Keeler v. Aramark,*
    483 F. App'x 421 (10th Cir. 2012) ..................................................22

*Kollar v. United Transp. Union,*
    83 F.3d 124 (5th Cir. 1996) ...........................................................25

*Lee v. City of Columbus, Ohio,*
    636 F.3d 245 (6th Cir. 2011) ...................................................2, 15, 16

*Levya v. Cert. Grocers of Cal., Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ....................................................28, 29

*Lingle v. Norge Div. of Magic Chef, Inc.,*
    486 U.S. 399 (1988) .....................................................................25

*Magnuson v. Burlington Northern, Inc.,*
    576 F.2d 1367 (9th Cir. 1978) ..................................................4, 25, 27

*Majewski v. ADP, Inc.,*
    274 F.3d 1106 (6th Cir. 2001) .....................................................2, 10

*McCormack v. Aircraft Mechs. Fraternal Ass'n*,
    340 F.3d 642 (8th Cir. 2003) ................................................................25

*Mediterranean Enters, Inc. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) ..............................................................29

*Monroe v. Missouri Pacific R.R.*,
    115 F.3d 514 (7th Cir. 1997) ................................................................25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).................................................................................28

*Neal v. Asta Funding, Inc.*,
    No. 13-3438, 2014 WL 131770 (D.N.J. Jan. 6, 2014).............................31

*Perry v. Am. Airlines, Inc.*,
    405 F. Supp. 2d 700 (E.D. Va. 2005) ....................................................28

*Perry v. Am. Red Cross Blood Servs.*,
    No. 3–13–1146, 2015 WL 1401058 (M.D. Tenn. Mar. 26, 2015) .........14

*Pollard v. ALSCO*,
    No. 1:09-cv-873, 2011 WL 1595147 (S.D. Ohio April 27, 2011)..........14

*Saqr v. Univ. of Cincinnati*,
    No: 1:18-cv-542, 2019 WL 699347 (S.D. Ohio Feb. 20, 2019).............15

*Seeger v. Cincinnati Bell Tele. Co., LLC*,
    681 F.3d 274 (6th Cir. 2012) ............................................................1, 31

*Taylor v. City of Shreveport*,
    798 F.3d 276 (5th Cir. 2015) ................................................................16

*Tice v. American Airlines, Inc.*,
    288 F.3d 313 (7th Cir. 2002) ............................................................4, 28

*Transportation-Communication Emps. Union v. Union Pacific R.R.*,
    385 U.S. 157 (1966).............................................................................26

*VanSlyck v. GoJetAirlines, LLC*,
    323 F.R.D. 266 (N.D. Ill. 2018)............................................................28

*Veta v. Am. Airlines, Inc.*,
    No. 95-56299, 1997 WL 90374 (9th Cir. 1997) ....................................27

*West v. Butler*,
  621 F.2d 240 (6th Cir. 1980) ............................................................10

*Williams v. United Steel Workers of Am.*,
  No. 09-00743, 2010 WL 909883 (S.D. Ohio Mar. 10, 2010)............................................2, 11

*Yates-Mattingly v. Univ. of Cincinnati*,
  No. 1:11-cv-753, 2012 WL 3779934 (S.D. Ohio Aug. 31, 2012) ....................................2, 15

**STATUTES**

29 U.S.C. § 216 ..............................................................................3, 18

29 U.S.C. § 705(20)(B) .......................................................................13

29 U.S.C. § 794 ...........................................................................13, 15, 16

29 U.S.C. § 1140 ..............................................................................10

29 U.S.C. § 2614(a)(3)(A) ..................................................................3, 19

29 U.S.C. § 2617 ...........................................................................3, 18

29 U.S.C. § 2653 ..............................................................................24

42 U.S.C. § 12102(1)-(2) ....................................................................13

42 U.S.C. § 12112(d) ...................................................................13, 16, 17

45 U.S.C. § 153 .........................................................................4, 6, 28

49 U.S.C. § 11101(a) .........................................................................5

**OTHER AUTHORITIES**

29 C.F.R. § 825.205 .....................................................................4, 23, 24

29 C.F.R. § 825.215 .....................................................................3, 19, 22

29 C.F.R. § 825.700 ..........................................................................24

29 C.F.R. § 825.702(b) .......................................................................14

29 C.F.R. § 1630.2(i)(1) .....................................................................13

73 Fed. Reg. 67934 (Nov. 17, 2008)...................................................21, 22

## SUMMARY OF ARGUMENT

Nothing in the Family and Medical Leave Act ("FMLA") "prevents employers from ensuring that employees who are on leave from work do not abuse their leave." *Seeger v. Cincinnati Bell Tele. Co., LLC*, 681 F.3d 274, 284 (6th Cir. 2012). Like most employers, defendant CSX Transportation Inc. ("CSXT") maintains policies that are designed to discourage and penalize abuse of FMLA leave, including the use of such leave solely to avoid working on weekends and holidays.

Plaintiffs Schobert and York were among a group of CSXT employees who were investigated for abuse of FMLA leave. Both of them – along with hundreds of other employees – took FMLA leave over the 2017-18 Christmas and/or New Year holidays, perpetuating a pattern of taking intermittent FMLA leave on holidays or in conjunction with other time off, thereby forcing their co-workers to pick up the slack and delaying shipments to CSXT's customers. In accordance with the railroad's collectively bargained disciplinary procedures, CSXT initiated individualized investigations and determined that some employees – including York – had engaged in misuse of FMLA leave. Many others who had used FMLA leave over this same period – including Schobert – were absolved of wrongdoing. CSXT suspended or terminated those who had used leave dishonestly.

Plaintiffs are now challenging both York's termination and various aspects of CSXT's FMLA policies. In particular, the Plaintiffs raise claims concerning CSXT's policies for calculating FMLA leave, as well as how CSXT handles FMLA leave under its attendance policy and with respect to so-called "guarantee" payments that employees receive in exchange for remaining available to work. In addition to suing on their own behalf, Plaintiffs seek to bring claims under Federal Rule of Civil Procedure 23 on behalf of 14 putative classes of current and former CSXT employees.

1

As set forth in the summary below, *see* S.D. Ohio Civ. R. 7.2(a)(3), Plaintiffs' claims have no merit, and should be either dismissed or resolved as a matter of summary judgment. Alternatively, Plaintiffs' claims should be stayed pending arbitration, as recently occurred in an overlapping putative class action claim against CSXT in Maryland.

I.     <u>Motion for Judgment on the Pleadings</u>.  CSXT is entitled to judgment on the pleadings on Plaintiffs' claims under the Employee Retirement Income Security Act ("ERISA") and the Rehabilitation Act, as well as their class claims under the FMLA.

A.     Plaintiffs fail to state a claim under ERISA.  Section 510 of ERISA required Plaintiffs to plead that CSXT acted with the specific intent to deprive them of ERISA plan benefits.  Instead, Plaintiffs have alleged only that CSXT interfered with their use of FMLA leave, which purportedly had the effect of preventing them from scheduling medical appointments and requiring them to pay more for health care.  That is insufficient for a § 510 claim.  *See, e.g.*, *Majewski v. ADP, Inc.*, 274 F.3d 1106, 1113 (6th Cir. 2001); *Williams v. United Steel Workers of Am.*, No. 09-00743, 2010 WL 909883, at *7 (S.D. Ohio Mar. 10, 2010).

B.     Plaintiffs likewise fail to state a claim under the Rehabilitation Act.  First, they have failed to allege that they are disabled within the meaning of the Act.  *See, e.g.*, *Davis v. CEVA Logistics*, No. 1:12–cv–351, 2013 WL 434051 (S.D. Ohio Feb. 5, 2013).  Second, Plaintiffs cannot show that their purported disabilities were the *sole cause* of any adverse employment action, as the Rehabilitation Act requires.  *E.g.*, *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 250 (6th Cir. 2011); *Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-cv-753, 2012 WL 3779934, at *5 (S.D. Ohio Aug. 31, 2012).  Third, Plaintiffs fail to identify any inquiries CSXT made with the sole purpose of obtaining information about their alleged disabilities.  *See Lee*, 636 F.3d at 255.

C.      Plaintiffs' class claims brought pursuant to the FMLA are faulty because any representative FMLA claim must be brought as an "opt-in" collective action using the standards applicable under the Fair Labor Standards Act.  Plaintiffs have instead pled their claims as an "opt-out" class action under Rule 23.  *Compare* 29 U.S.C. § 2617(a)(2) (FMLA) *with* 29 U.S.C. § 216(b) (FLSA); *see also Clary v. Sw. Airlines*, No. 3:07-cv-0126, 2007 WL 4947690, at *1 (N.D. Tex. Dec. 17, 2007).

II.     <u>Motion for Summary Judgment</u>.  CSXT is entitled to summary judgment on Plaintiffs' complaints about the railroad's guarantee and attendance policies, as well as its policy for calculating FMLA leave.  In addition, the Railway Labor Act ("RLA") precludes Plaintiffs' claims regarding alleged retaliatory discipline and misuse of medical information.

A.      With respect to CSXT's attendance policy, Plaintiffs complain that an employee who takes unpaid FMLA leave is ineligible for the policy's "Good Attendance Credit" (*i.e.*, the removal of any accumulated disciplinary points after a period of good attendance).  But the FMLA does not entitle employees to "the accrual of any . . . employment benefits during any period of leave."  29 U.S.C. § 2614(a)(3)(A); *see also* 29 C.F.R. § 825.215(d)(2). This includes absenteeism forgiveness benefits.  *E.g.*, *Dyer v. Ventra Sandusky, L.L.C.*, 317 F. Supp. 3d 953, 956 (N.D. Ohio 2018).

B.      Plaintiffs' contention that CSXT deprives engineers of guarantee pay, in violation of the FMLA, is also meritless.  Engineers on CSXT's extra boards receive guarantee pay as compensation for remaining available to take calls when other employees cannot work.  If they are unavailable to take these calls due to *any* noncompensated leave, including FMLA leave, their guarantee pay is reduced.  CSXT's policy treats unpaid FMLA leave the same as all other forms of unpaid leave, and is thus entirely lawful. *See* 29 C.F.R. § 825.215(c)(2).

3

C.     Like the plaintiffs in a parallel case currently pending in Maryland federal court, Plaintiffs have alleged, *see* Compl. ¶ 10, that CSXT calculates use of FMLA leave in increments that are greater than one hour.  That is simply not so.  Instead, CSXT counts employees' FMLA usage by the 1/100 of an hour.  This is entirely consistent with FMLA regulations, and the Court should grant summary judgment on this claim.  29 C.F.R. § 825.205.

D.     The rules governing discipline – including the evidentiary standards that are used to determine employee guilt or innocence – are set out in the collective bargaining agreement ("CBA") between CSXT and Plaintiffs' union.  Plaintiffs challenge the decisions made pursuant to that process, but their claims implicate the interpretation and application of the CBA, which questions are exclusively within the jurisdiction of a neutral arbitrator pursuant to the RLA.  45 U.S.C. § 153 First (m).  Accordingly, the RLA preempts the claims, and this Court cannot consider them.  *Hawaiian Airlines v. Norris*, 512 U.S. 246 (1994); *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir. 1978).

III.    <u>Motion to Stay</u>.  If this Court does not dismiss Plaintiffs' claims or otherwise declines to rule on them at this time, this case should be stayed pending arbitration under the RLA.  Courts have broad discretion to stay statutory claims pending the arbitration of grievances based on the same underlying facts.  *E.g.*, *Tice v. American Airlines, Inc.*, 288 F.3d 313 (7th Cir. 2002).  Here, the outcome of York's pending grievance over his dismissal, and the grievances of the other employees he seeks to represent, will invariably alter the posture of Plaintiffs' claims in this proceeding.  For this reason, a federal district court in Maryland recently stayed putative class claims nearly identical to Plaintiffs' retaliatory discipline claims.  Allowing Plaintiffs' claims to proceed in this District would conflict with the Maryland ruling, result in duplicative discovery, and deprive the Court of information that may be useful to the resolution of this matter.

4

# BACKGROUND

## A.    The Parties

CSXT is a rail carrier engaged in interstate commerce.  Compl. ¶ 6.  Freight

transportation is a derived demand industry – railroads must move freight when it is tendered to

them, and have limited control over when or how much freight must be moved at any given time.

Indeed, they are required by law to provide transportation services upon reasonable request.  49

U.S.C. § 11101(a).  For many decades, customer demands have required CSXT to operate 24

hours per day, seven days a week, 52 weeks a year.  Compl. ¶ 31.

Plaintiffs and the putative class members they seek to represent are current and former

train and engine ("T&E") employees, *i.e.*, employees who are responsible for manning and

operating CSXT's trains.  Plaintiff Tony Schobert has worked for CSXT since 2003, and as a

locomotive engineer since 2012.  *Id.* ¶ 52.  Plaintiff John York, also an engineer, worked for

CSXT from 2001 until his dismissal in February 2018.  *Id.* ¶¶ 94, 123.

## B.    CSXT's Disciplinary Procedures

Engineers (including Schobert and York) are represented by the Brotherhood of

Locomotive Engineers and Trainmen ("BLET").  Declaration of John Johnson ("John Johnson

Decl.") ¶ 2.  A CBA between the BLET and CSXT governs engineers' terms and conditions of

employment.  *Id.*  The CBA establishes a disciplinary process under which employees who may

have committed a rule violation must be charged within 10 days.  *Id.* ¶¶ 12-13.  If CSXT does

not charge an employee within that time period, it cannot discipline the employee for the offense.

*Id.*  The CBA also prohibits CSXT from disciplining employees for rule violations without first

holding a hearing, unless the employee waives his right to the hearing and admits the

misconduct.  *Id.* ¶ 14.  After the hearing, which is conducted pursuant to procedures established

by the CBA, CSXT generally has 30 days to assess discipline.  *Id.*

5

Employees can challenge any discipline by filing a "claim" under the CBA.  If not otherwise resolved, a claim will be heard by a neutral third-party arbitrator.  *See id.* ¶ 16; *see also* 45 U.S.C. § 153 First (i).  In arbitration, CSXT has the burden to prove substantial evidence supported its disciplinary decision.  *Id.* ¶ 15.

### C.    CSXT's T&E Staffing Procedures

CSXT employs several different staffing systems for its T&E service employees.  John Johnson Decl. ¶ 3.  Some T&E employees work jobs with fixed hours and assigned off days in yard, local or road switcher service.  *Id.*  Employees working these assignments work primarily at a fixed location.  *Id.*

Other T&E employees are assigned to a "pool" that is responsible for runs between two locations.  *Id.* ¶ 4.  Pool assignments are handled through a complex system.  Greatly simplified, employees in the pool are placed on a rotating list (sometimes called a "board").  *Id.*  When a train is ready for departure, the employee at the top of the board is called to work.  *Id.*  Employees who have just completed service are placed at the bottom of the board.  *Id.*  Railroad employees in pool service operate trains from one terminal, called the home terminal, to another terminal, sometimes called the away-from-home terminal.  *Id.*  These employees stay overnight at the away-from-home terminal to rest according to federal statutory requirements, and after getting the required rest, they are called to operate a train back to the home terminal.  *Id.* ¶ 5.

Still other employees may elect to work "guaranteed" extra boards, on which employees are assured a minimum monthly income—known as a guarantee—in exchange for remaining available to fill temporary vacancies created when other employees are unavailable.  *Id.* ¶¶ 7-8.  The applicable CBA sets the terms of the guarantee.  *Id.* ¶ 9.  In certain circumstances, an extra board member may "mark off" or "lay off," meaning that he temporarily removes himself from the list of available employees.  *Id.* ¶ 6.  Under the CBA between CSXT and the BLET, if an

6

extra board member marks off from availability for a "non-compensated reason" (including FMLA leave), and that engineer misses a call, his or her guarantee is reduced.[1] *Id.* ¶ 9 & Ex. 1. The guarantee is not reduced if an employee marks back up before being called. *Id.*

### D. CSXT's Point-Based Attendance Policy

T&E employees are subject to the CSX Transportation Attendance Point System, or "CAPS." John Johnson Decl. ¶ 10. Under the CAPS Policy, T&E employees are assessed points for unexcused mark-offs or other absences – but *not* for FMLA leave – and are progressively disciplined for each 20 points they accrue. *Id.* ¶ 11 & Ex. 2. The CAPS Policy also provides for a "Good Attendance Credit." An employee is awarded this credit and three points are deducted from his or her accumulated point total

> for every calendar month in which the employee has no attendance incidents covered under the Attendance Point Schedule . . . and has not otherwise been absent during the calendar month for any reason, with the exception of approved vacation, demand day off (DDO), personal leave, jury duty, work-related illness or injury with valid doctor's note and bereavement leave days.

*Id.* at Ex. 2.

### E. CSXT's Calculation of FMLA Leave Usage

CSXT tracks FMLA leave usage by the 1/100 of an hour. Declaration of Jolanda Johnson ("Jolanda Johnson Decl.") ¶ 5. For T&E employees like Plaintiffs who do not work a set schedule and are on call for 24 hour periods, CSXT calculates FMLA leave on a prorated basis to reflect an eight-hour work day. *Id.* ¶¶ 7-8. To do so, CSXT counts the total number of hours, and fractions thereof, a T&E employee spends "marked off" on FMLA leave during a single calendar day. It then divides that total by three (the number of 8-hour increments in each day),

---

[1] The CBA provides that the guarantee is "reduced by 1/14 on Monday through Thursday and one-half (1/2) on Friday Saturday or Sunday," except in the case of military leave, which results in a 1/14th reduction regardless of the day of the week on which it is taken. John Johnson Decl. Ex. 1 at Art. 82(A)(7).

and charges that reduced number of hours against the employee's 12-week FMLA allotment.  *Id.*
CSXT never calculates FMLA leave usage in increments that are greater than one hour.  *Id.* ¶ 5.

### F.  Plaintiffs' Allegations

Plaintiffs were approved for, and used, intermittent leave under the FMLA.  *Id.* ¶¶ 58,
100.  In January 2018, CSXT investigated whether Schobert had misused FMLA leave by taking
it to avoid working on Christmas.  *Id.* ¶¶ 73-77.  CSXT exonerated Schobert of any wrongdoing.
*Id.* ¶ 85.  CSXT similarly investigated York in 2018, to determine whether he had misused
FMLA leave by taking it to avoid working on New Year's Eve and New Year's Day.  *Id.* ¶ 115.
Following a hearing and based on review of the evidence, CSXT determined that York was
guilty of misusing FMLA leave, and so dismissed him for dishonesty.  *Id.* ¶ 123.

Plaintiffs allege that they were part of a "holiday 'dragnet' operation," pursuant to which
"hundreds of employees were suspended, and many were terminated for using already-certified
FMLA leave."  *Id*. ¶ 89.  Specifically, Plaintiffs allege that "in late 2017 and early 2018, CSX
suspended without pay and charged with discipline every employee who was properly certified
for FMLA leave and took FMLA leave on or around Christmas 2017 and New Year's Day
2018."  *Id*. ¶ 36.  In addition to challenging discipline of employees who misused FMLA leave,
Plaintiffs allege CSXT interferes with employees' use of FMLA leave because:

- Employees who take FMLA leave are not eligible for the Good Attendance
Credit.  Compl. ¶¶ 16-18.

- CSXT strips engineers of guarantee pay if they use intermittent FMLA leave on
or near a weekend.  *Id*. ¶¶ 12-15.

- CSXT counts FMLA leave in increments of greater than an hour.  *Id*. ¶¶ 9-11.

- CSXT sent "threatening" mass communications to discourage employees' use of

8

FMLA leave in conjunction with vacations, weekends, and holidays. *Id.* ¶¶ 19-29, 32-35.

- CSXT makes employees' FMLA leave usage available to all employees with access to the mainframe computer system. *Id.* ¶ 30.

- CSXT "request[ed] additional proof of [employees'] need for [FMLA] leave," and improperly included this information in their personnel records. *Id.* ¶¶ 39-43.

Based on the same facts underlying their allegations of FMLA interference, Plaintiffs have also alleged that CSXT violated ERISA by allegedly discouraging FMLA use and other absences at the end of the calendar year. *Id.* ¶¶ 160-63. Plaintiffs further claim CSXT violated Section 504 of the Rehabilitation Act, because their FMLA leave was purportedly a reasonable accommodation for disabilities. *Id.* ¶¶ 164-171.

## I. CSXT IS ENTITLED TO JUDGMENT ON THE PLEADINGS

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). To survive a Rule 12(c) motion, the plaintiff must have pled "sufficient factual matter" to render his legal claim plausible, *i.e.*, more than merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Making this "plausibility" determination is a "context-specific task." *Id.* at 678-79. At a minimum, the complaint must "contain either direct or inferential allegations respecting all the material elements [of a claim] to sustain a recovery under some viable legal theory." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009). "[A] legal conclusion couched as a factual allegation" need not be accepted, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Here, Plaintiffs cannot allege sufficient facts to support their ERISA, Rehabilitation Act, or FMLA class claims. These claims should be dismissed as a matter of law.

### A.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER ERISA

Plaintiffs allege that CSXT violated Section 510 of ERISA by discouraging employees

from using their medical benefits.  Section 510 provides, in relevant part, as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or
> discriminate against a participant or beneficiary for exercising any right to which he is
> entitled under the provisions of an employee benefit plan . . . or for the purpose of
> interfering with the attainment of any right to which such participant may become
> entitled under the plan . . . .

29 U.S.C. § 1140.

The aim of § 510 is to "prevent[ ] unscrupulous employers from discharging or harassing

their employees in order to keep them from obtaining vested [ERISA plan] rights."  *West v.*

*Butler*, 621 F.2d 240, 245 (6th Cir. 1980).  In order to state a claim under § 510, a plaintiff must

allege "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the

attainment of any right to which the employee may become entitled."  *Gaglioti v. Levin Grp.,*

*Inc.*, 508 F. App'x 476, 485 (6th Cir. 2012) (quoting *Humphreys v. Bellaire Corp.*, 966 F.2d

1037, 1043 (6th Cir. 1992)).  Critically, "no action lies where the alleged loss of rights is a mere

consequence, as opposed to a motivating factor behind the [alleged adverse action]."  *Dytrt v.*

*Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990); *Abbott v. Pipefitters Local*

*Union No. 522 Hosp., Med., and Life Benefit Plan*, 94 F.3d 236, 242 (6th Cir. 1996) (ERISA

plaintiff must show that "interfering with the plaintiff's entitlement to benefits" was "a

motivating factor in the defendant's action"); *Majewski v. Automatic Data Processing, Inc.*, 274

F.3d 1106, 1113 (6th Cir. 2001) (plaintiff failed to establish *prima facie* case simply because

"discharge caused him to lose the opportunity to accrue additional benefits").  In other words, a

plaintiff must allege his employer acted with "specific intent to violate ERISA."  *Id.*; *Gaglioti*,

508 F. App'x at 485.

Courts routinely apply these principles to dismiss § 510 claims as a matter of law. Thus, for example, in *Williams v. United Steel Workers of America*, this Court dismissed a plaintiff's § 510 claim because he failed to plead facts showing his employer acted with "specific intent" to deprive him of benefits. No. 1:09–cv–743, 2010 WL 909883, at *7 (S.D. Ohio Mar. 10, 2010). Instead, "[t]o support his conclusory allegation that Defendants acted 'to prevent pension benefits due [him],' Williams [pled] only that his termination 'result[ed] in a loss of pension benefits.'" *Id.* Similarly, the court in *Hollowell v. Cincinnati Ventilating Co., Inc.*, dismissed an employee's § 510 complaint because his "allegations . . . amount[ed] to nothing more than the *fact* that Plaintiff was terminated from a job that sponsored an ERISA-regulated plan of which he was a participant and the *legal conclusion* that he was terminated to interfere with those benefits . . . ." 711 F. Supp. 2d 751, 758 (E.D. Ky. 2010) (emphasis in original).

In this case, Plaintiffs allege that under CSXT's health insurance plans, it is "advantageous for employees to make appointments and seek treatment at the end of the year, because the deductible and annual out of pocket maximum reset on January 1 of each year." Compl. ¶ 50. They further allege that CSXT, by "discouraging FMLA and other absences at the end of the calendar year," tried to interfere with employees' use of their health insurance benefits. *Id.* ¶ 51. In other words, their theory appears to be that CSXT specifically intended to discourage end-of-year medical plan usage.

However, any claim of "specific intent" to interfere with ERISA plan benefits in this regard is belied by the Plaintiffs' own allegations. Plaintiffs claim that CSXT "discouraged" employees from using FMLA leave throughout the year, not just at the end of the year. *See, e.g.*, Compl. ¶¶ 24-27, 70 (alleging that CSXT issued notices in January, May, June, and November 2018 that were intended to discourage employees from taking FMLA leave); *id.* ¶¶ 16-18

(alleging that CSXT's attendance policy—which applies throughout the year—"actively discouraged" Plaintiffs from taking FMLA leave); *id.*¶ 19 (alleging that CSXT has "threatened employees with discipline for taking FMLA on or around holidays and scheduled off days").  In addition, Plaintiffs allege that CSXT sent threatening letters "to every single CSX employee . . . who had been approved for intermittent FMLA and took FMLA leave in conjunction with another day off," without regard to whether the employee had met or exceeded his out-of-pocket maximum and deductible for the calendar year.  *Id.* ¶ 63.  Thus, by Plaintiffs' own admission, there is no linkage between enforcement of the railroad's FMLA policies and the use of medical plan benefits at any specific time of year.

Given that, it is obvious that any supposed loss of ERISA medical plan rights "is a mere consequence, as opposed to a motivating factor" behind CSXT's enforcement of its FMLA policies.  *Dytrt*, 921 F.2d at 896.  Even if Plaintiffs found it more difficult to use their plan benefits – an allegation that CSXT would deny – that is merely derivative of the company's policy that employees may only use FMLA leave for legitimate purposes.  There is no allegation here that any employee was specifically or expressly denied or refused the right to use medical plan benefits.  Nor is there is any allegation that CSXT discriminated against employees who used medical benefits when enforcing its FMLA policy; to the contrary, the Plaintiffs allege that CSXT supposedly charged and suspended "every" employee who took FMLA leave on or around Christmas 2017 and New Year's Day 2018.  Compl. ¶ 36.  In the end, Plaintiffs are only complaining about an FMLA policy, not a medical plan benefit policy, and so trying to reframe or recast their position under § 510 does not work.  Because Plaintiffs have not pled and cannot plead "specific intent" within the meaning of § 510, this claim should be dismissed as a matter of law.

### B.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE REHABILITATION ACT

The Rehabilitation Act prohibits employers who receive federal funding from discriminating against an employee "solely by reason of his or her disability," 29 U.S.C. § 794(a), or from making certain disability-related inquiries.  *Id.* § 794(d); *see also* 42 U.S.C. § 12112(d).  For three reasons, Plaintiffs cannot state a claim under this law.

### 1.    Plaintiffs Do Not Adequately Allege That They Are Disabled

The Rehabilitation Act incorporates the definition of "disability" found in the Americans with Disabilities Act ("ADA"): "a physical or mental impairment that substantially limits one or more major life activities." *See* 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)-(2).  To state a claim, a plaintiff must identify at least one major life activity that is substantially limited by his alleged disability; alleging only that he is disabled is not enough.  *See, e.g.*, *Davis v. CEVA Logistics*, No. 1:12–cv–351, 2013 WL 434051 (S.D. Ohio Feb. 5, 2013) (dismissing ADA claim for failure to specify the major life activities affected by the alleged disability); *Johnson v. Fresh Mark, Inc.*, 337 F. Supp. 2d 996, 1001 (N.D. Ohio 2003), *aff'd*, 98 Fed. App'x 461 (6th Cir. 2004) (ADA claim was not adequately pled where plaintiff did not specify the major life activities that were affected by her condition).

"Working" is a major life activity.  29 C.F.R. § 1630.2(i)(1).  To be substantially limited in the ability to work, however, a plaintiff must be unable to perform a broad class of jobs and not just a single job.  *See Bracken v. DASCO Home Med. Equipment, Inc.*, No. 1:12–CV–892, 2013 WL 3275479, at *10 (S.D. Ohio Jun. 27, 2013) ("Even if the Court were to infer that [plaintiff] intended to allege that he was substantially limited . . . in the major life activity of working, he still has not alleged that he was unable to work in a broad class of jobs . . . ."); *see also Jones v. STOA Int'l/Fla., Inc.*, 422 Fed. App'x 851, 853 (11th Cir. 2011) (fact that plaintiff's condition caused her to miss several days of work was insufficient to establish disability).

In his Complaint, Schobert alleges that he "suffered an injury that resulted in a continuing disability of the spine." Compl. ¶ 55. However, he does not say how it affected him except to allege that it "causes [him] intermittent neck and back pain that renders him temporarily unable to perform his job during . . . flareups." *Id.* ¶ 56. It is therefore impossible to determine from Schobert's Complaint whether his alleged disability prevents him from performing a broad class of jobs, or just occasionally prevents him from performing his own job (which is not enough). York's allegations also fall short. He alleges that he has a "disability of the knee," which "impacts . . . his ability to walk," and which "caused . . . intermittent knee pain that rendered him temporarily unable to perform his job during . . . flareups." *Id.* ¶¶ 97-98. Like Schobert, however, York does not allege that he is unable to work in a broad class of jobs, and thus likewise fails to adequately allege a disability.

Moreover, the mere fact that Schobert and York were approved for FMLA leave does not establish that either one was "disabled." FMLA leave requires a "serious health condition," which is not the same thing as a "disability" under the ADA. *See* 29 C.F.R. § 825.702(b) (the "ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately."). Thus, just because someone is entitled to FMLA leave does not mean that he or she is disabled. *See id.*; *Pollard v. ALSCO*, No. 1:09-cv-873, 2011 WL 1595147, at *7 (S.D. Ohio April 27, 2011) ("The fact that Plaintiff took FMLA leave does not equate to a disability"); *Ebright v. City of Pickerington*, No. 2:16-cv-378, 2018 WL 1512280, at *9 (S.D. Ohio Mar. 27, 2018) (no evidence of disability where plaintiff identified "an impairment that, at worst, will intermittently prevent her from working"); *Perry v. Am. Red Cross Blood Servs.*, No. 3–13–1146, 2015 WL 1401058, at *4 (M.D. Tenn. Mar. 26, 2015) ("approval for FMLA leave does not alone mean that a person is 'disabled' under the ADA").

14

## 2. Plaintiffs Do Not Adequately Allege That They Were Disciplined Because Of A Disability

To establish disability discrimination under the Rehabilitation Act, a plaintiff must show an adverse employment action was taken "solely" because of a disability. 29 U.S.C. § 794; *see also Lee v. City of Columbus, Ohio*, 636 F.3d 245, 249-50 (6th Cir. 2011); *Boker v. Sec'y, Dep't of Treasury*, No. 07–00446, 2009 WL 3199074, at *3 (S.D. Ohio Sept. 29, 2009). A complaint that alleges more than one cause of discrimination, based on the same set of facts, is incompatible with relief under the Rehabilitation Act. *Saqr v. Univ. of Cincinnati*, No: 1:18-cv-542, 2019 WL 699347, at *11 (S.D. Ohio Feb. 20, 2019) (dismissing Rehabilitation Act claim because "Plaintiffs clearly allege more than one cause of discrimination"), *R&R adopted*, 2019 WL 1200802 (Mar. 14, 2019).[2]

In this case, Plaintiffs allege that CSXT discriminated against them "because of their disability" when it disciplined them. Compl. ¶ 170. But they simultaneously allege that CSXT discriminated against all employees who took FMLA leave. *Id.* ¶¶ 11-22. Moreover, in doing so, Plaintiffs allege that CSXT "charged with discipline *every* employee who . . . took FMLA leave on or around Christmas 2017 and New Year's Day 2018." *See id.* ¶ 36 (emphasis added); *see also id.* at ¶¶ 19, 49. Plaintiffs do not claim that CSXT treated "disabled" employees who took FMLA leave any worse than non-disabled ones who took FMLA leave. *Id.* ¶ 36. Because Plaintiffs have pled that their use of FMLA leave was a cause of the alleged discipline, they cannot assert that their alleged disabilities were the "sole" reason for any adverse employment action, as the Rehabilitation Act requires.

---

[2] *See also Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-cv-753, 2012 WL 3779934, at *5 (S.D. Ohio Aug. 31, 2012) (dismissing claim where plaintiff "alleged that she was terminated because of her age and race, in addition to her disability*"); Doe v. BlueCross BlueShield of Tenn., Inc*., No. 2:17-cv-02793, 2018 WL 3625012, at *4 (W.D. Tenn. July 30, 2018) (amended complaint did not satisfy Rehabilitation Act's "solely because of" language).

### 3. Plaintiffs Do Not Adequately Allege CSXT Made A Disability-Related Inquiry

The Rehabilitation Act prohibits an employer from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability," except under certain circumstances. *See* 29 U.S.C. § 794(d) (incorporating by reference portions of the ADA); 42 U.S.C. § 12112(d)(4)(A) (ADA provision prohibiting certain disability-related inquiries). Asking for medical information from employees is not itself unlawful. *See Lee*, 636 F.3d at 255 (request for note identifying the "nature of the [employee's] illness" was "not *ipso facto* a prohibited inquiry"). Similarly, an inquiry is not unlawful because it "may merely *tend to* reveal a disability." *Id.* (emphasis in original). Instead, to run afoul of the Rehabilitation Act, a request must be "intended to reveal or necessitate[] revealing a disability." *Id.*; *Taylor v. City of Shreveport*, 798 F.3d 276, 285 (5th Cir. 2015) ("Because an employer's request for a general diagnosis is neither intended to reveal nor necessitates revealing a disability, it does not violate the Rehabilitation Act.").

In *Lee*, for example, a class of employees alleged that their employer's policy of requiring employees returning from sick leave to provide a doctor's note stating "the nature of the illness" and whether the employee was capable of returning to regular duty violated the Rehabilitation Act's prohibition on disability-related inquiries. The Sixth Circuit disagreed. It found that the policy did "not trigger the protections of § 12112(d)(4)(A)" because "there [was] no evidence that" the City's "generalized and uniform inquiry" was "intended to reveal or necessitate[d] revealing a disability." 636 F.3d at 255. And, even if the employees had shown that the request for a doctor's note amounted to a disability-related inquiry, this still would not have proved their claim because the policy applied equally to all employees, disabled or not. *Id.* at 255; *see also* EEOC, *Questions and Answers: Enforcement Guidance on Disability-Related*

*Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act*, at Question 15 (employer may request that an employee provide a doctor's note or other explanation when the employee has used sick leave, "as long as it has a policy or practice of requiring all employees . . . to do so").

The same analysis applies here. Plaintiffs allege that *all* employees who took FMLA leave on Christmas 2017 and New Year's Day 2018 were required to "produce medical documentation proving he or she had a need for [the] leave," and were fired if they did not do so. Compl. ¶¶ 36, 42. By Plaintiffs' own account, then, CSXT requested medical information in order to verify that employees had used FMLA leave legitimately, and not to reveal whether an employee was disabled. Moreover, because an employee does not need to be disabled in order to use FMLA leave, these requests would not necessarily have revealed a disability. Accordingly, CSXT's request for medical information was not a disability-related inquiry. And, even if it was, CSXT still would not have violated the Rehabilitation Act because the information was requested from all employees who used FMLA leave and not just from those who were disabled.

On a related note, Plaintiffs cannot argue that CSXT violated the Rehabilitation Act by entering into evidence and placing in their personnel files "protected health information" regarding their use of FMLA leave. The Rehabilitation Act protects the confidentiality of a very narrow class of records: those obtained as a result of job-related medical examinations or inquiries into an employee's ability to perform job-related functions. *See* 42 U.S.C. § 12112(d)(3)-(4). Records regarding an employee's use of FMLA leave do not fall into either one of these categories. Thus, the way in which those records were handled cannot give rise to liability under the Rehabilitation Act. All of Plaintiffs' Rehabilitation Act claims should be dismissed.

### C. PLAINTIFFS' FMLA CLASS CLAIMS ARE IMPROPERLY PLED UNDER FEDERAL RULE 23

The FMLA's enforcement scheme is remarkably similar to that of the Fair Labor Standards Act ("FLSA"): both laws expressly authorize individuals to bring claims on behalf of "other employees similarly situated." *Compare* 29 U.S.C. § 2617(a)(2) (FMLA) *with* 29 U.S.C. § 216(b) (FLSA); *see also Clary v. Sw. Airlines*, No. 3:07-cv-0126, 2007 WL 4947690 at *1 (N.D. Tex. Dec. 17, 2007) ("the statutory language of the enforcement provision of the FMLA . . . mirrors that of the FLSA"). The FMLA's legislative history confirms that this similarity was intentional and that the same enforcement procedures apply to both laws. *See* S. Rep. No. 103-3 at 35 (1993) (the FMLA "creates no new . . . enforcement procedures, but instead relies on the time-tested FLSA procedures already established by the Department of Labor"). Accordingly, just as representative wage claims cannot be litigated as an opt-out class action and instead can only proceed as an opt-in collective action, the same is true of representative FMLA claims. *See Clary*, 2007 WL 4947690, at *2 ("class certification pursuant to the collective action provisions of 29 U.S.C. § 216(b) is the only method of class certification available when dealing with FMLA class violations").

Nevertheless, Plaintiffs plead their representative FMLA claims as opt-out class actions rather than as opt-in collective actions. Because representative FMLA claims cannot be brought under Rule 23, Plaintiffs' class allegations (Paragraphs 131-139 and 141-142 of the Complaint) should be dismissed.[3]

---

[3]    Dismissal on this basis obviates the need to consider the usual criteria for class certification under Rule 23. But even if these claims were properly brought under Rule 23, CSXT would show that certification would be improper for a variety of reasons, including lack of commonality and/or typicality. The inquiry as to discipline for each employee depends on the details of when and why he or she used FMLA, and thus is inherently individualized.

## II. PLAINTIFFS' OTHER CLAIMS SHOULD BE DISMISSED ON SUMMARY JUDGMENT

"[A] party may file a motion for summary judgment at any time until 30 days after the close of . . . discovery." *See* Fed. R. Civ. P. 56(b). Early summary judgment motions are appropriate, and an effective case management tool, when the non-moving party cannot set forth any factual basis supporting its need for additional discovery. *See Allen v. City of Jackson, Tenn.*, 590 F. App'x 490, 492 (6th Cir. 2014); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002).

Here, CSXT is entitled to summary judgment on Plaintiffs' claims in Count I challenging the railroad's attendance policy, guarantee policy, and method of calculating FMLA leave. Plaintiffs' claims concerning CSXT's disciplinary decisions – and the propriety of the evidence on which CSXT relied – may also be resolved on summary judgment.

### A. AS A MATTER OF LAW, CSXT'S ATTENDANCE POLICY DOES NOT VIOLATE THE FMLA

CSXT's no-fault attendance policy, known as CAPS, does not assess any points to employees who take FMLA leave, and Plaintiffs do not claim otherwise. *See* Compl. ¶ 16. Rather, Plaintiffs claim that this policy violates the FMLA to the extent that employees who take FMLA leave are disqualified from receiving a Good Attendance Credit—*i.e.*, the removal of points for having perfect attendance during the month. Compl. ¶¶ 17-18. This claim is meritless.

The FMLA does not entitle employees to "the accrual of any . . . employment benefits during any period of leave." 29 U.S.C. § 2614(a)(3)(A); *see also* 29 C.F.R. § 825.215(d)(2). Based on these provisions, courts have determined that employees who use FMLA leave are not entitled to accrue absenteeism forgiveness while they are out on leave. *See, e.g.*, *Dyer v. Ventra Sandusky, L.L.C.*, 317 F. Supp. 3d 953, 956 (N.D. Ohio 2018); *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 750-51 (7th Cir. 2010).

19

In *Dyer*, an employee brought an FMLA lawsuit challenging an attendance policy under which employees could reduce their attendance points by achieving perfect attendance for thirty days. 317 F. Supp. 3d at 955. Time off for vacation, bereavement, jury duty, military duty, union leave, and holidays counted towards the 30-day threshold, but time off for FMLA leave did not. *Id.* This Court nevertheless found the policy lawful, because "FMLA leave only interrupts the process for removing points, and an employer does not violate the Act by withholding a benefit that an employee on FMLA leave has not earned." *Id.* at 960.

Similarly, in *Bailey*, an employee who was dismissed under a points-based attendance policy sued her former employer, alleging that its policy violated the FMLA because FMLA leave did not count towards the 12-month threshold upon which attendance points were removed from an employee's record. The practical effect of this policy was that employees who used FMLA leave could have fewer unexcused absences than employees who did not use FMLA leave. Nevertheless, the Seventh Circuit held that this policy did not violate the FMLA because "absenteeism forgiveness . . . is a reward for working," and not something that must be provided to employees on FMLA leave. 600 F.3d at 752.

The same reasoning applies here. Indeed, the CSXT policy at issue is virtually the same as the employer attendance policy in *Dyer*. Plaintiffs allege CSXT's attendance policy violates the FMLA because employees who take FMLA leave are not eligible for the "Good Attendance Credit," which removes points from an employee's attendance record. However, absenteeism forgiveness is a benefit that an employee must earn – not one that must be provided to employees on FMLA leave. *Dyer*, 317 F. Supp. 3d at 960. Accordingly, the fact that employees who use FMLA leave are not eligible for the Good Attendance Credit does not violate the FMLA. The relevant portions of Count I of the Complaint should therefore be dismissed with prejudice.

20

### B. AS A MATTER OF LAW, CSXT'S GUARANTEE POLICY DOES NOT VIOLATE THE FMLA

Plaintiffs allege CSXT violates the FMLA because "if engineers use intermittent FMLA leave on or near a weekend during the on-call period, CSX strips the engineers of their guarantee pay for an entire week, even if the engineer would not have worked on the FMLA day." Compl. ¶ 13. This contention is factually and legally meritless.

Engineers on CSXT's extra boards are offered guarantee pay in exchange for remaining available to be called when regularly-assigned employees are unavailable for work. John Johnson Decl. ¶ 8. If an extra board member marks off from availability for "any non-compensated reason" (including FMLA leave), and that engineer misses a call, his or her guarantee will be reduced. *Id.* at Ex. 1. But "[e]ngineers marking off for any non-compensated reason will . . . not have their guarantee reduced if marked up before their turn is called." *Id.*

CSXT's guarantee policy is consistent with Department of Labor ("DOL") regulations, which were revised in 2008 to address how employers should treat FMLA leave in connection with payments based on attendance goals. Employers had long argued it would be unfair to employees who do not miss work to treat them the same as employees who take intermittent FMLA leave; employee groups argued the opposite. *See* 73 Fed. Reg. 67933, 67984 (2008). In resolving this issue, DOL concluded employees who take FMLA leave are entitled to be treated the same as employees who take "equivalent" forms of leave – no better, and no worse:

> Allowing an employer to disqualify employees taking FMLA leave from bonuses or awards for the achievement of a specified goal unless the bonus is awarded to employees on an equivalent leave status for a reason that does not qualify as FMLA leave puts employees who take FMLA leave on equal footing with employees who take leave for non-FMLA reasons. The Department does not view this as interference because employees taking FMLA leave are not being treated differently than employees taking equivalent non-FMLA leave. Accordingly, employees taking FMLA leave neither lose any benefit accrued prior to taking leave, nor accrue any additional benefit to which they would not otherwise be entitled.

*Id.* at 67985. Thus, DOL concluded that "if an employer's policy is to disqualify all employees who take leave without pay from such [attendance] bonuses or awards, *the employer may deny the bonus to an employee who takes unpaid FMLA leave*." *Id.* (emphasis added). *See also id.* (denying "reward for achieving the job-related performance goal of perfect attendance" does not violate the FMLA); 29 C.F.R. § 825.215(c)(2) (2009) ("[I]f a bonus . . . is based on the achievement of a specified goal, such as . . . *perfect attendance*, and the employee has not met the goal due to FMLA leave, then the payment may be denied, unless [the bonus is] otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave.") (emphasis added).

DOL's interpretation has been repeatedly upheld by the federal courts. *See, e.g., Keeler v. Aramark*, 483 F. App'x 421, 423 (10th Cir. 2012) (employer lawfully denied holiday pay to employee); *Jefferson v. Time Warner Cable Enters. LLC*, 584 F. App'x 520, 523 (9th Cir. 2014) (unpaid leave is a valid basis to deny bonus). In *Franks v. Indian Rivers Mental Health Center*, for example, a plaintiff argued that she should be entitled to "on-call pay" for remaining available to take calls outside her regular hours, even though her use of FMLA leave made her unavailable to take those calls. No. 7:08–CV–1035, 2012 WL 4736444, at *16 (N.D. Ala. Sept. 30, 2012). Citing DOL's regulations on attendance bonuses, the court found an employer may lawfully "deny an employee on-call pay during FMLA leave, where that pay is based on performance (*i.e.* taking calls) and where the employee is unable to so perform (*i.e.* take calls) due to FMLA leave . . . ." *Id.*; *see also Flowers v. McCartney*, No. 4:17CV00604, 2019 WL 138661, at *3 (E.D. Ark. Jan. 8, 2019) (weekend pay differential was "a bonus or other payment premised on an attendance record," and could be "denied based on absences from FMLA leave—so long as other absences are treated likewise").

Here, CSXT's guarantee policy is clear that employees will earn their full guarantee only if they are available when called, and have not marked off or otherwise taken *any type* of unpaid leave. The policy does not discriminate against employees for using leave under the FMLA, but applies across-the-board to all employees who take noncompensated leave and thus cannot satisfy the primary purpose of a guaranteed extra board—*i.e.*, being available to respond to calls. Because CSXT treats unpaid FMLA leave no better and no worse than other equivalent forms of unpaid leave, CSXT's guarantee rules are fully compliant with the FMLA. Thus, this aspect of Count I of the Complaint should also be dismissed.

### C.   CSXT APPLIES A LAWFUL APPROACH TO CALCULATING EMPLOYEES' USE OF FMLA LEAVE

Next, Plaintiffs allege that CSXT's FMLA leave usage calculation violates the FMLA. More specifically, Plaintiffs point to 29 C.F.R. § 825.205(a), which provides that employers "must account for the leave using an increment no greater than the shortest period of time that the employer uses to account for use of other forms of leave provided that it is not greater than one hour . . . ." 29 C.F.R. § 825.205(a). Plaintiffs allege that CSXT violates this regulation by accounting for FMLA leave in increments of 1/100 of a week, or 1.68 hours. In other words, it seems that Plaintiffs believe whenever an employee marks off for FMLA leave, he will always be charged with having taken at least 1.68 hours of FMLA leave (which equates to approximately 1 hour and 40 minutes), even if he was marked off for less than 1.68 hours. *See* Compl. ¶¶ 10-11.

That is not so. As explained above and in the attached Declaration of Jolanda Johnson, CSXT tracks FMLA leave by 1/100 of an hour, not 1/100 of a week. *See* Jolanda Johnson Decl. ¶ 5. Moreover, CSXT prorates the total amount of time off, with the result that employees are always charged for significantly *less* time than they actually used. Because T&E employees are

on call 24 hours a day, CSXT could simply start counting whenever an employee calls in to "mark off" on FMLA leave, and stop counting when the employee calls to "mark back up," and then charge all of those hours against the employee's balance. Instead, CSXT divides the amount of hours used by three, thereby prorating the amount of FMLA leave to an eight-hour workday. *Id.* ¶¶ 8-9. For example, an employee who marks off for 24 hours straight is charged with having taken only 8 hours of FMLA leave (even though he could have been called to work at any time during that 24-hour window), and an employee who marks off for 1 hour is charged with having taken only 0.33 hours of FMLA leave.[4] *Id.* Accordingly, an employee is never charged with taking *more* FMLA leave than the total time for which he or she was marked off; he or she is always charged with having taken *less* leave.

This method of counting is not only more generous than required by the Act, but is also fully authorized by the FMLA and its accompanying regulations. *See* 29 U.S.C. § 2653 (employers may offer more generous policies than required by the FMLA); 29 C.F.R. § 825.700 (same). The regulations permit employers to count leave used by employees with "variable hours" using the sort of pro-rata approach employed by CSXT. *See* 29 C.F.R. § 825.205(b)(1). Plaintiffs' claim that CSXT miscalculates FMLA leave is erroneous and should be dismissed with prejudice.

---

[4]     To further illustrate this point, on August 4, 2018, Plaintiff Schobert marked off for FMLA leave at 11:17 a.m., and marked back up at 10:53 p.m., a total of 11 hours and 36 minutes (11.6 hours). Because FMLA leave is calculated on a prorated basis, however, CSXT charged Schobert with using only 3.87 hours of leave (11.6 hours divided by 3). Jolanda Johnson Decl. ¶ 10 & Exs. 2-3. Similarly, on July 24, 2017, Plaintiff York marked off for FMLA leave from 4:02 a.m. to 6:00 p.m.—13.97 hours total—and yet was charged with having used only 4.65 hours of FMLA leave. Jolanda Johnson Decl. ¶ 11 & Exs. 4-5.

### D.  THE RAILWAY LABOR ACT PRECLUDES PLAINTIFFS' DISCIPLINE CLAIMS

It is well-settled that the RLA preempts or precludes any employment claims that are predicated on or implicate the resolution of alleged violations of a CBA.  *See, e.g., Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir. 1978).[5]  This is because the exclusive forum for interpretation or application of CBAs – so-called "minor disputes" – is arbitration.  *See Andrews v. Louisville & N.R.R.*, 406 U.S. 320, 325 (1972); *Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299 (1989). Thus, "preemption," in this context, simply means that the dispute must be resolved in arbitration instead of in court.

The test for whether a claim is preempted by the RLA was summarized in *Hawaiian Airlines v. Norris*, 512 U.S. 246 (1994).  *Norris* held that the RLA preempts claims "involving the interpretation or application of existing labor agreements." *Id.* at 256.  The Court noted that "purely factual questions" presented by a claim will not require a court to interpret a CBA.  *Id.* at 246.  Thus, for example, a claim for retaliatory discharge that turns on "purely factual" issues of motive is not preempted.  *Id.* at 261.  But if the claim is "dependent on the interpretation of a CBA" – if it implicates an assessment of contract terms –  it will be preempted, even if it is styled as a claim arising under some other law.[6]  *Id.* at 262.

---

[5]       *See also, e.g., Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 792-93 (6th Cir. 2012) (claim preempted); *Blomer v. Nw. Airlines, Inc.*, 401 F.3d 935 (8th Cir. 2005) (same); *McCormack v. Aircraft Mechs. Fraternal Ass'n*, 340 F.3d 642 (8th Cir. 2003) (same); *Monroe v. Missouri Pacific R.R.*, 115 F.3d 514 (7th Cir. 1997) (same); *Kollar v. United Transp. Union*, 83 F.3d 124 (5th Cir. 1996) (same); *Arbogast v. CSX Corp.*, 831 F.2d 290 (4th Cir. 1987) (*per curiam*) (same).  The analysis is the same regardless of whether the claim arises under state law or federal law, but in the latter case the doctrine is called "preclusion" rather than "preemption."  *Felt v. Atchison, Topeka & S.F. Ry.*, 60 F.3d 1416, 1419 (9th Cir. 1995).

[6]       Other courts have framed the inquiry as whether any interpretation or application of the CBA is "inextricably intertwined" with the claims at issue.  *E.g., Gore v. Trans World Airlines*, 210 F.3d 944, 950 (8th Cir. 2000) (false arrest, libel, slander, and negligence claims preempted); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988).

In this case, York alleges he was dismissed in violation of the FMLA and Rehabilitation Act. Compl. ¶¶ 138-39. The core merits question presented by those claims is whether CSXT honestly believed that York (and the employees he purports to represent) used FMLA leave dishonestly. This inquiry overlaps with the inquiry in arbitration, which is whether CSXT's disciplinary decision was supported by "substantial evidence."[7] John Johnson Decl. ¶ 15. If there was substantial evidence of wrongdoing, then by definition CSXT had a basis for honestly believing that the employee had used FMLA leave dishonestly. Thus, by deciding Plaintiffs' discipline claims in this case, the Court would effectively be deciding an aspect of their contractual claims as well. The RLA prohibits this outcome. York's retaliatory discipline claim, as well as the related class allegations, must be dismissed in favor of arbitration.

For similar reasons, the RLA precludes or preempts claims which arise out of the handling of hearings conducted pursuant to collectively bargaining procedures, including claims concerning the handling of evidence introduced during an "on-property" investigation. For example, in *Miller v. Norfolk & Western Ry. Co.*, the Sixth Circuit held that an employee could not sustain a defamation claim based on testimony given "in the course of [an] investigation and hearings that were conducted under the terms of the CBA." No. 89-4101, 1990 WL 163302, at *5 (6th Cir. 1990) (*per curiam*). While the issue of defamation was not before the board in the arbitration hearing, the truth of the statements made was. *Id.* Accordingly, "the plaintiff's defamation claim [was] inextricably intertwined with the collective bargaining agreement," and

---

[7]     The "substantial evidence" rule is an implied term of the CBA. As the Supreme Court has explained, CBAs comprise both express and implied terms, including industry standards, norms, and practices. *Norris,* 512 U.S. at 265. *See also Transportation-Communication Emps. Union v. Union Pacific R.R.*, 385 U.S. 157, 160-61 (1966) ("A collective bargaining agreement is not an ordinary contract . . . it is a generalized code to govern a myriad of cases."). Thus, a claim is preempted if it requires interpretation of implied contractual terms arising from practices, procedures, or "codes of conduct that are part of the working relationship." *Fry v. Airline Pilots Ass'n*, 88 F.3d 831, 836 (10th Cir. 1996).

"dismissal of [the] case with instructions that the plaintiff pursue the matter before the public law board was proper."  *Id.*; *see also Henegar v. Banta*, 27 F.3d 223, 226 (6th Cir. 1994) (defamation claim based on testimony at on-property hearing preempted); *Magnuson*, 576 F.2d at 1369-70 (fairness of investigation hearing matter for arbitration);  *Veta v. Am. Airlines, Inc.*, No. 95-56299, 1997 WL 90374, at *2 (9th Cir. 1997) (RLA preempted claim based on "contention that American conducted an illegal investigation").

In this case, Plaintiffs' claims challenge CSXT's manner of handling its contractually-required investigations.  Specifically, Plaintiffs complain that CSXT required employees to produce "medical documentation proving [they] had a need for leave on the days in question." Compl. ¶¶ 42, 85-88.  Plaintiffs further complain that CSXT "entered into the hearing records protected health information from the employees' certification process" and "medical information presented by employees in defense of their right to FMLA leave." *Id.* ¶¶ 41, 43, 83, 119.  Resolving the validity or propriety of this alleged conduct would require this Court to resolve whether CSXT properly managed its contractual investigation process, including whether it had a contractual right to request the disputed information, as well as whether the railroad appropriately introduced or used exhibits relevant to the Company's burden to prove, by substantial evidence, that Plaintiffs engaged in FMLA fraud or misuse.  This, in turn, would require the Court to interpret the CBA's provisions regarding the handling of evidence in connection with investigation and discipline, as well as what constitutes just cause.  *See* John Johnson Decl. Ex. 1, Art. 30.  The RLA precludes the Court from considering any claims which requires such analysis.  Plaintiffs' claims based on CSXT's alleged collection and use of their medical information should be dismissed.

27

**III.    IF NOT DISMISSED, PLAINTIFFS' CLAIMS SHOULD BE STAYED**

Courts have discretion to stay claims that could be affected by arbitration.  *See*, *e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (analyzing in context of Federal Arbitration Act); *Levya v. Cert. Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."); *Tice v. Am. Airlines*, 288 F.3d 313, 318 (7th Cir. 2004) (staying case pending RLA arbitration is "normal procedure when an arbitrable issue arises in the course of a federal suit.").

In *Tice*, for example, the Seventh Circuit stayed a plaintiff's age discrimination claims pending arbitration because a potentially dispositive issue turned on the interpretation of the CBA.  *Id.*  Likewise, in *VanSlyck v. GoJetAirlines, LLC*, 323 F.R.D. 266 (N.D. Ill. 2018), the court stayed the plaintiff's FMLA retaliation claims pending arbitration of grievances based on the same underlying facts.  In doing so, the court explained that "a stay of non-arbitrable claims is not only appropriate, it is 'the normal procedure when an arbitrable issue arises in the course of a federal suit' . . . even where the plaintiff intends to pursue discrimination claims regardless of the arbitration's outcome."  *Id.* at 276 (quoting *Tice*, 288 F.3d at 317-18).  This procedure is logical considering that the arbitrator's factual findings are "final and binding," 45 U.S.C. § 153 First (m), and can be so even in court proceedings.  *See Perry v. Am. Airlines, Inc.*, 405 F. Supp. 2d 700, 707 (E.D. Va. 2005) (arbitrator's finding that carrier discharged plaintiff for cause

28

precluded him from re-litigating in FMLA retaliation case whether his employer had a legitimate, non-pretextual reason to discipline him).

In deciding whether to issue a stay, courts take into account whether they may wish to consider an arbitrator's factual findings or whether the arbitral process may help to resolve the entire dispute. In *Air Line Pilots Association, International v. Northwest Airlines, Inc.*, the court explained its decision to stay non-arbitrable claims pending RLA arbitration as follows:

> In that situation the appropriate procedure is for the court to suspend its own proceedings until the end of the arbitral process or until it is clear that arbitration cannot be obtained. *It is wise to await the completion of the arbitration process because the primary focus of the complaint though it does present independent statutory claims is on the alleged violation of the pension plan, and arbitration, if had, may either resolve the entire controversy or at least aid in the solution by the court of the statutory contentions*. If arbitration is had, we leave open for future determination what weight the District Court should give to purely factual findings, if any, made by the arbitration board which may also bear on the independent statutory claims, e.g. whether [defendant] intentionally or unreasonably delayed in paying out the contributions of the pilots opting for "cash out."

627 F.2d 272, 278 (D.C. Cir. 1980) (emphasis added). *See also*, *e.g.*, *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 644-45 (5th Cir. 1985) (holding RLA arbitration board's factual finding that an employee filed a false injury report is entitled to controlling deference and alone may defeat an employee's retaliatory discharge claim) (*citing Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974) (arbitral decision may be "accorded such weight as the court deems appropriate")); *Everett v. USAir Group, Inc.*, 927 F. Supp. 478, 484 (D.D.C. 1996) (staying independent ERISA claim pending RLA arbitration).[8]

---

[8]     The same is true in cases involving non-RLA arbitration. Courts often choose to stay litigation where the arbitrator's findings might bear on any non-arbitrable claims. *See*, *e.g.*, *Mediterranean Enters, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (affirming stay of non-arbitrable claims because by deciding the issues necessary to resolve the arbitrable counts "the arbitrator might well decide issues which bear in some way on the court's ultimate disposition of" the non-arbitrable counts); *Levya*, 593 F.2d at 863-64 (recognizing arbitral "findings, as well as the documents and testimony produced during the arbitration hearing, may be of valuable assistance to the court in resolving the [non-arbitrable] claims").

In this case, as in *Northwest Airlines*, it would be wise to await the outcome of arbitration before proceeding with this case.  Plaintiff York has filed a claim challenging his dismissal under the CBA, and still has the right to appeal CSXT's denial of this claim to an arbitrator.  John Johnson Decl. ¶ 18.  York joins 50-plus T&E employees who have filed claims relating to their discipline for FMLA abuse, all of whom would be members of Plaintiffs' putative discipline and termination classes.  *Id.* ¶ 17.  Their claims depend, to at least some extent, on the notion that the railroad's asserted reasons for its actions are pretextual.  As noted above, if an arbitrator concludes that CSXT had legitimate reasons for its decisions, that could be weighed by the Court in assessing whether Plaintiffs can carry their ultimate burden of proof—both on the merits of their case and with respect to any potential motion for class certification.  Conversely, if York or any putative class member prevails in the arbitration, it could limit the relief he could obtain in this proceeding.  Indeed, the pending contractual claims could provide the employees with nearly all of the relief they are seeking here, including reinstatement and full back pay.  In other words, because the arbitration result has at least the potential to be relevant, the Court should stay this case until it is over.

This was the course followed by the U.S. District Court for the District of Maryland with respect to claims based on facts nearly identical to those Plaintiffs allege here, arising out of CSXT's discipline of employees for FMLA misuse over the 2017 holidays.  ECF No. 40, *Bell v. CSX Transp., Inc.*, Case No. 1:18-cv-00744-JKB (D. Md. Nov. 19, 2018).  Plaintiffs in that case alleged, on behalf of themselves and a putative "Discipline or Termination" class, that CSXT had retaliated against them in violation of the FMLA.  *See* ECF No. 1.  In the meantime, 18 of the 20 named plaintiffs had also filed claims under the CBA, appealing discipline assessed against them for using FMLA dishonestly.  ECF No. 15-11 ¶ 8.  Because the issues raised by the plaintiffs'

lawsuit substantially overlapped with their arbitration claims, the court stayed the *Bell* case in its entirety, pending the conclusion of arbitral proceedings.  ECF No. 40.  This Court should do the same.

Considerations of judicial economy and equity also support a stay.  It is well-settled that a court may stay a case if doing so will "promote judicial economy, avoidance of confusion and possible inconsistent results" without "work[ing] undue hardship or prejudice" to the parties.  *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1995).  For example, a court may impose a stay pending arbitration if it will help ensure the discovery process in litigation does not intrude upon the issues which are preempted by the RLA and exclusively within the arbitrator's province.  *Neal v. Asta Funding, Inc.*, No. 13-3438, 2014 WL 131770, at *4-6 (D.N.J. Jan. 6, 2014).

In this case, CSXT is already in the midst of arbitrating the claims related to discipline issued for FMLA misuse over Christmas 2017 and New Year's 2018, as required by the RLA.  Completion of those proceedings first, before this case is litigated, will limit the risk of inconsistent results, ensure that discovery in this case does not interfere with the arbitral process, and will not prejudice either side.  Perhaps more importantly, CSXT has already conducted extensive discovery in the *Bell* case, which is currently stayed pending the results of arbitration.  This includes exchanging tens of thousands of pages of documents and deposing 42 fact witnesses.  Permitting this case to proceed while the *Bell* case is stayed would result in duplicative discovery.  Moreover, given the substantial overlap in class definitions, allowing the class discipline claims alleged in this case to proceed would effectively thwart the stay entered by the District of Maryland. *See* Compl. ¶¶ 137-139.  A stay therefore promotes the interests of justice in this case.

## CONCLUSION

For the foregoing reasons, CSXT is entitled to judgment on Plaintiffs' claims described above.  In the alternative, this case should be stayed pending arbitration.


Dated: May 1, 2019

 /s/ *Lindsay M. Cogley*
Lindsay M. Cogley (0089676) (Trial Attorney)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215-2673
Telephone: (614) 281-3887
Facsimile: (614) 461-4198
lcogley@jonesday.com

Donald J. Munro (*pro hac vice*)
Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
dmunro@jonesday.com
tchiavetta@jonesday.com

*Attorneys for Defendant CSX Transportation, Inc.*