IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SCHOBERT, ET AL., | Case No. 1:19-cv-00076 |
| Plaintiffs, | Judge: Hon. Douglas R. Cole |
| v. | |
| CSX TRANSPORTATION, INC. | **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

Now comes Plaintiffs, by and through Counsel, and hereby provide this honorable Court their Response to Defendant's Motion for Summary Judgment, filed May 1, 2019.[1] (Doc. 15.)

I.     FACTS

     a. **<u>Plaintiffs Anthony Schobert's and John York's Employment and Intermittent FMLA Leave</u>**

Plaintiff Anthony Schobert has worked for Defendant since 2003, and since 2012 as an Engineer. (Schobert Aff. at 3-4, attached as "Ex. A".) To manage a health condition, Plaintiff Schobert applied for and received intermittent FMLA leave, which has been certified since 2014. (Id. at 9.) Plaintiff Schobert's FMLA leave allows for two episodes per month, two days of leave per episode and two office visits per month. (Id. at 10.)

Plaintiff John York was employed by Defendant as an Engineer from 2011 until Defendant terminated him effective February 24, 2018. (York Aff. at 3-4, attached as "Ex. B".) To manage his health condition, Plaintiff York applied for and received intermittent FMLA from July 5, 2013

---

[1] Plaintiffs withdraw opposition to Defendant's Motion for Summary Judgment of Plaintiffs' claim that CSXT's manner of calculating FMLA leave violates the FMLA. (Doc. 15 at (2)(c).)

until his termination. (Id. at 9.) Plaintiff York's FMLA allowed for episodic flare ups three to four times per month, lasting one day, and one office visit per month. (Id. at 10.)

b. **Defendant's No-Fault Attendance Policy, "CAPS"**

Defendant's no-fault attendance policy is set out in its Crew Attendance Point System ("CAPS"). (Tingly Dep. 009:24-010:06, Ex. AA1.) The policy applies to all of Defendant's train and engine ("T&E") employees, regardless of union membership. (Tingley Dep. 010:21-011:03.) Pursuant to CAPS, employees are assessed points for various incidents of nonattendance. (Tingley Dep. at 063:07-063:13.) An incident of nonattendance means that an employee is unavailable for work – "[w]hen the employee misses a call or is in any displaced status… when they are in an unavailable status." (Tingley Dep. 063:14-063:19, Ex. AA1 at CSXT001265.) Employees do not receive points if they are in unavailable status due to FMLA leave. (Tingley Dep. 065:09-065:14.)

Once an employee accumulates 20 attendance points they begin to be "handled," or subject to progressive discipline. (Tingley Dep. 090:06-090:11, Ex. AA1 at CSXT001266.) As points accumulate discipline progresses until eventually an employee is terminable for accumulating too many attendance points. (Tingley Dep. 090:24-091:01, Ex. AA1 at CSXT001266.) CAPS includes a "Good Attendance Credit" policy that deducts three points from employees' accumulated attendance points for every calendar month in which an employee has no attendance incidents covered under the policy. (Tingley Dep. 091:11-091:17, Ex. AA1 at CSXT001265.)[2]

Under the Good Attendance Credit policy, if an employee is unavailable to work the employee does not receive Good Attendance Credit. (Tingley Dep. 101:20-101:22.) From 2015

---

[2] Effective June 1, 2019, Defendant amended its CAPS policy such that the good attendance credit earning period was increased from one month to six months and the good attendance credit was increased in size from three to ten points. (Tingley Dep. at 127:10-127:13, 132:12-132:16, 133:01-133:04.) This change does not materially impact Plaintiffs' claim that including FMLA leave as an absence under the Good Attendance Credit policy violates the FMLA.

2

until 2018 or 2019 an employee's unavailability to work due to FMLA leave counted as an absence under the Good Attendance Credit policy and precluded application of the Good Attendance Credit for the period during which the employee availed himself of FMLA leave. (Tingley Dep. 077:21-078:09, 094:25-095:06; CAPS Policy Change, attached as "Ex. C".)[3] After Defendant changed its policy, an employee could receive the Good Attendance Credit despite taking FMLA, but only if an entitlement day was used concurrently with FMLA leave. (Tingley Dep. 0078:05-0078-09, 096:04-096:13; Ex. C.)

At all times relevant to his Complaint, Plaintiff York had access to up to five days of certified intermittent FMLA leave per month. As such, in any month York needed to take intermittent FMLA leave Defendant's policy automatically deprived him of his Good Attendance Credit or required the exhaustion of an entitlement day to avoid the automatic forfeiture of his Good Attendance Credit. (Ex. B at 36-37; York Dep. 163:11-163:16, 165:5-165:12, 166:1-166:7, 231:19-231:25; Tingley Dep. Ex. D.)

At all times relevant to his Complaint, Plaintiff Schobert had access to up to six days of certified intermittent FMLA leave per month. As such, in any month Schobert needed to take intermittent FMLA leave Defendant's policy automatically deprived him of his Good Attendance Credit or required the exhaustion of an entitlement day to avoid the automatic forfeiture of his Good Attendance Credit. (Ex. A at 49-50; Schobert Dep. 172:18-173:02, 173:18-173:22, 183:02-183:12, 232:01-232:07.)

---

[3] While deponents' testimony was that the change that allowed employees to take an entitlement day concurrently with FMLA leave occurred in 2018, documentation seems to suggest that the change occurred in 2019. This uncertainty in the record is not of relevance to Defendant's summary judgment motion and would be clarified in future discovery or at trial.

### c. Defendant's Guarantee Pay Policy

T&E employees are offered Guarantee Pay in exchange for remaining available on a "guarantee extra board" to be called to fill in for regularly scheduled employees who are not available to work. (Gorneault Dep. at 22.) If for any reason a T&E employee is unavailable to remain on call on the Guarantee Pay list, they mark off the extra board. (Id.) When they are available for the extra board list, they mark up. (Id.)

The consequences of marking off for FMLA leave depends on the CBA governing the T&E employee's employment. (Gorneault Dep. at 46:08-46:16, 90:10-90:15.) Under the UTU Agreement, Guarantee Pay is reduced by one day for any non-compensated mark off, including FMLA leave. Under the BLE Agreement, Guarantee Pay is reduced only if the employee does not use a compensated entitlement concurrently with his FMLA leave and their turn on the extra board list is not called for work. (Gorneault Dep. at 47:01-13, 47:21-48:02, 51:13-18, 64:23-65:01, 131:16-131:22.) At all times relevant to their Complaint, Plaintiffs' Guarantee Pay was governed by the BLE agreement. (Def. Resp. Int. No. 1, attached as Ex. D.)

Under Defendant's Guarantee Pay Policy, all T&E employees may use compensated entitlement (e.g., paid personal leave or vacation leave) concurrently with FMLA leave to receive compensation for the day. (Gorneault Dep. at 131:16-132:01.) Employees cannot use a compensated entitlement concurrently with uncompensated leave other than FMLA to avoid losing pay for the day. (Gorneault Dep. at 86:17-86:24.) If an employee remains available and is called to work, the pay for work subrogates the amount that employee would have earned in Guarantee Pay. (Gorneault Dep. at 74:14-74:18.) If an employee takes a compensated entitlement concurrently with FMLA leave, the entitlement value subrogates the Guarantee Pay. (Gorneault Dep. at 57:03-57:08.)

4

T&E employees who require FMLA leave on the weekends, "12:00 am Friday to midnight Sunday", are assessed a higher penalty against their Guarantee Pay, even if they mark back up for the remainder of the Guarantee Pay period. (Gorneault Dep. at 99:01-100:19,170:23-171:04, 178:15-178:24.) Thus, if a T&E employee marks off for FMLA leave during weekend hours and misses a call for work, they miss half of their two-week Guarantee Pay, or a full week of Guarantee Pay, even if he marks back up for the remainder of the Guarantee Pay period. (Id.)

Compensated entitlements like Vacation, Personal Leave, or Bereavement do not result in Guarantee Pay loss. (Ex. A, at Resp. Int. No. 1 Chart.) Defendant treats several forms of unpaid leave more favorably than uncompensated FMLA leave. (Id.) As noted above, if a T&E employee requires unpaid FMLA leave on the weekend and misses work, they lose ½ of their two-week Guarantee Pay period as a penalty. (Id.) Yet, if a T&E employee avails himself of an unpaid Demand Day Off, unpaid short-term Military leave, or unpaid Union Business during weekend hours, they lose only one day for that leave ($1/14^{th}$ of his two-week Guarantee Pay period). (Id.) That employee is not subjected to the higher penalty that an employee who needs FMLA leave on the weekend suffers. (Id.; Gorneault Dep. at 99:01-100:19.) At all times relevant to their Complaint, Plaintiffs Schobert and York were assessed the higher weekend penalty for using FMLA leave during weekend hours. (Ex. A at 19; Ex. B at 19.)

II. ARGUMENT

    a. **Summary Judgment Standard**

Summary judgment may only be granted when no genuine issue of material fact presents and the moving party is entitled to judgment as a matter of law. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998). Defendant bears the responsibility of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material

5

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). One genuine issue of material fact is sufficient to defeat summary judgment. *Middleton v. Reynolds Metals Co.*, 963 F.2d 881 (6th Cir. 1992). A fact is "material" if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment, as that function is exclusively for the jury. *Anderson*, 477 U.S. at 255; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654 (1962). The court should "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *Crawford v. Met. Gov. of Nashville & Davidson Cnty.*, 555 U.S. 271, 129 S.Ct. 846, 846 n. 1, 172 L.Ed.2d 650 (2009) ("[W]e are required to view all facts and draw all reasonable inferences in favor of the nonmoving party.")

### A. Defendant's CAPS policy violates the FMLA.

"The FMLA allows employees to take up to twelve weeks of leave per year for the employee's own serious health condition that makes the employee unable to perform the functions of the position of such employee. At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment. An employer is prohibited from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). An employer who violates the FMLA is liable to the employee for damages." *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019), internal quotations omitted.

There are two available "theories of recovery under the FMLA: (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Id.*, quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012), internal quotation marks omitted.

"To prevail on an FMLA interference claim, a plaintiff must establish that (1) he was an eligible employee as defined under the FMLA; (2) his employer was a covered employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled." *Id.*, citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014).

It is considered interference for purposes of the Act for employers to use the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c). To prevail on an FMLA interference claim, Plaintiffs must show that taking FMLA-protected leave was used as a negative factor in Defendant's assessment of attendance points against them. *Demyanovich* at 475-476.

> 1. **Defendant's CAPS Policy Violates the FMLA To The Extent it Deprives Employees Who Avail Themselves of FMLA Leave of The Opportunity To Earn Good Attendance Credit.**

Defendant argued on summary judgment that its attendance point forgiveness scheme is "virtually the same as the employer attendance policy in *Dyer*." (Doc. 15-1, p. 27.) The relevant dispute in *Dyer* centers on whether an employer's refusal to forgive attendance points for employees taking otherwise approved FMLA leave constitutes interference under the FMLA.

7

*Dyer* at 475-477 (6th Cir.). The district court, considering the matter on summary judgment, allowed for this kind of plan on the grounds that the employer's plan did not take away an earned benefit explicitly because employees availed themselves of FMLA leave, but rather was preventing employees who took FMLA leave from gaining new benefits. *Dyer* at 960 (N.D. OH).

On appeal, the Sixth Circuit rejected the district court's logic, stating plainly that "denying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave." *Dyer* at 476 (6th Cir.). While the district court attempted to create a distinction between benefits taken away as opposed to benefits that are never given, the Sixth Circuit rejected this flawed logic by highlighting the fact that plans such as the one seen in *Dyer* have the effect of locking individuals out of certain types of employment benefits solely because they availed themselves of federally provided and protected leave. *See Id*. Like the facts in *Dyer*, Defendant's policies are interference under the FMLA because, "'attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights.'" *Id*. quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001), internal citations omitted.

Like the plaintiff in *Dyer*, every time Plaintiffs needed to take FMLA intermittent leave, they were deprived of a benefit of employment. Specifically, Plaintiffs were denied "the flexibility of the no-fault attendance policy that every other employee not taking FMLA leave enjoyed." *Dyer* at 476 (6th Cir.).

In fact, Defendant's CAPS policy is worse than the policy in *Dyer*, where employees were entitled to receive a forgiveness of attendance points for every thirty consecutive days they had perfect attendance. *See Dyer* at 474 (6th Cir.). Under CAPS, an employee must have perfect attendance for an entire *calendar month* to receive the same benefit, regardless of how many

8

consecutive days an employee is available to work. Under CAPS, were an employee to use FMLA leave on the first day of one month and the last day of the following month, such employee could have perfect attendance for almost sixty days but still be deprived of any Good Attendance Credit, while the same employee under the *Dyer* scheme would have been forgiven two points.

Furthermore, the Sixth Circuit in *Dyer* suggests that employers rewarding perfect attendance could avoid running afoul of the FMLA by "freezing" the accrual of the benefit during an employee's FMLA leave. *See Dyer* at 477 (6th Cir.). While possible under the plan in *Dyer*, such a mitigating plan is impossible under CAPS. In the present case, Defendant's calendar-based point arrangement is binary: either one is available for work the entire month, does not take FMLA leave, and receives the benefit, or one is unavailable to work because they took FMLA leave and the benefit is lost. There is no flexibility in Defendant's policies to suspend counting during FMLA leave such that the benefit is neither accrued nor denied, as was suggested as an alternative in *Dyer*.

Lastly, recognizing the problems that Dyer presents for its position, Defendant attempts to rely upon a federal court decision in Maryland. Not only was the Maryland court's decision issued before *Dyer*, it is not binding precedent on this Court and is unpersuasive. The *Dyer* decision from the Sixth Circuit clearly controls this case. For all the reasons stated above, Defendant's Motion for Summary Judgment should be denied.

> **2. Defendant's CAPS Policy, As Amended in 2018 or 2019, Violates the FMLA Because It Requires Employees Who Take FMLA Leave To Use Entitlements To Avoid Being Deprived of the Benefit of the Good Attendance Credit.**

"The plain language of the FMLA is clear. 'At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other

9

terms and conditions of employment.'" *Dyer* at 476, quoting *Bryson*, 498 F.3d at 569-70, citing 29 U.S.C. § 2614(a)(1).

Under the CAPS policy, as amended in 2018 or 2019, employees who take FMLA leave and would have otherwise received Good Attendance Credit must use an entitlement (vacation pay or another form of paid time off) to avoid losing the benefit of Good Attendance Credit. Defendant's policy violates the FMLA because an employee who must exhaust an entitlement to avoid being deprived of the Good Attendance Credit for taking FMLA leave clearly has not been "reinstated to […] a position equivalent in pay, benefits, and other terms and conditions of employment." *Id.*

"Whereas an employee is not entitled to 'accrue any additional benefits or seniority during unpaid FMLA leave[,] [b]enefits accrued at the time leave began … must be available to an employee upon return from leave.'" *Dyer at 477 (6th Cir.),* quoting C.F.R. § 825.215(d)(2). "The FMLA defines 'employment benefits' expansively to mean 'all benefits provided or made available to employees by an employer, including … sick leave, [and] annual leave,' whether provided by practice or written policy." *Id.*, quoting 29 U.S.C. § 2611(5). As such, entitlements are employment benefits under the Act. CAPS, as amended in 2018 or 2019, violates the FMLA because it required Plaintiffs to use an entitlement concurrently with FMLA leave lest they be deprived Good Attendance Credit. Defendant's Motion for Summary Judgment should be denied.

### 3. **<u>Defendant is not Entitled to Summary Judgment if FMLA Leave is Treated Less Favorably Than Other Equivalent Leave Statuses.</u>**

The FMLA not only requires that employers not interfere with employees' FMLA rights by dissuading them from taking FMLA leave via consequential deprivation of an employment

benefit, but it also requires employers to treat FMLA leave similar to other forms of unpaid leave. *See Dyer* at 478 (6th Cir.) Defendant admittedly does not. In its amended responses to Plaintiffs' Interrogatory No. 2, Defendant identified every category of paid or unpaid leave Plaintiffs could have taken between January 1, 2016 and present, and how those types of leave affect the Good Attendance Credit. (Tingley Dep. Ex. YY.) Defendant identified FMLA as unpaid leave, along with other forms of unpaid leave, including "Demand Day Off" and "Injury on Duty." Id. A Demand Day Off, is accrued to "engineers who have continuously been available for service for a calendar quarter, and have not taken any non-compensated time off, not including rest days." (Tingely Dep. Ex. OO, and Resp. Int. No. 1, item 1.) Injury on Duty is "time off related to an engineer's work related illness or injury." (Id. at item 16.) Inexplicably, while an employee who avails himself of unpaid FMLA leave is deprived Good Attendance Credit under CAPS, an employee who takes an unpaid Demand Day Off or who takes an unpaid day off related to an Injury on Duty is not deprived of Good Attendance Credit under CAPS. (Tingley Dep. Ex. YY.)

"Although neither the FMLA nor its implementing regulations define 'equivalent leave status,' the regulations imply that equivalency turns on whether the leave is paid or unpaid. For example, in describing the equivalency principle, the regulations state that 'if an employee *on leave without pay* would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on *unpaid FMLA leave*.'" *Dyer* at 478, quoting 29 C.F.R. § 825.220(c) (emphasis in *Dyer*).

Defendant's admission that it treats at least two forms of unpaid leave more favorably than FMLA leave under its CAPS Good Attendance Credit policy gives rise to a genuine issue of material fact relative to the additional requirement imposed by C.F.R. § 825.330(c). As such, Defendant's Motion for Summary Judgment should be denied.

11

### B. Defendant's Guarantee Pay Policy violates the FMLA.

"To prevail on an FMLA interference claim, a plaintiff must establish that (1) he was an eligible employee as defined under the FMLA; (2) his employer was a covered employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled." *Id.*, citing *Demyanovich v. Cadon Plating & Coatings, L.L.C* ., 747 F.3d 419, 427 (6th Cir. 2014).

> 1. **Defendant's Guarantee Policy Violates the FMLA Because it Creates a "Penalty" for Employees Taking FMLA Leave During Weekend Hours Through a Forfeiture of *an Entire Week's* Guarantee Pay. Defendant Itself Refers to the Guarantee Pay Forfeiture As A Penalty.[4]**

As an initial matter, Defendant attempts to mischaracterize Guarantee Pay as a "bonus" or "award" under DOL regulations. (Def. Mem. Supp. MSJ at 21-22.) But Guarantee Pay is clearly not an incentive offered in addition to the terms and conditions of T&E employees' employment. Rather, it is pay for remaining "on call," according to Defendant's designated 30(b)(6) witness on the issue. (Gorneault Dep. at 22:13-22:16.) It is also how T&E employees earn their following year's entitlements. Guarantee Pay does not function like a bonus or reward for achieving a performance goal like perfect attendance, under 29 C.F.R. § 825.15(c)2 (2009), as Defendant asserts. (Def. Mem. Supp. MSJ at 21.) Rather Guarantee Pay is the compensation Defendant's employees receive in exchange for the work of remaining on call and available to work. It is "an employment benefit, the accrual of which, like the accrual of other benefits or seniority, must be

---

[4] Gorneault Dep. at 63:16-19, ("Q: Is that because he marked off – is that a penalty from his guarantee pay. A: That is a penalty from his Guarantee Pay, yes.")

12

available to an employee upon return from FMLA leave. *Dyer* at 477, citing 29 U.S.C. § 2614(a)(2).

To penalize an employee for taking FMLA leave during weekend hours by reducing their Guarantee Pay by an entire week, even if the employee marks back up for the remainder of the Guarantee Pay period is to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. 2615(a)(1), and thus falls squarely under the court's analysis in *Dyer* at 475 (6th Cir. 2019). Defendant's employees are entitled to return from FMLA

> to a position equivalent in pay, benefits, and other terms and conditions of employment. Therefore denying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave. Put differently, attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights.

*Dyer* at 476 (6th Cir. 2019) (internal quotations omitted).

Defendant's Guarantee Pay policy penalizes employees for requiring FMLA leave during weekend hours by requiring the forfeiture of *an entire week's* Guarantee Pay, even if the employee returns from work within the Guarantee Pay period. Defendant itself refers to the Guarantee Pay forfeiture as a "penalty," which is tantamount to admitting that it imposes the forfeiture to discourage employees from using FMLA leave on the weekends. See 29 C.F.R. § 825.220(b) (see also, Gorneault Dep. at 63:16-19.) Both Schobert and York lost full weeks' worth of Guarantee Pay because they took FMLA leave during weekends, at all times relevant to their Complaint. (Ex. A at 23-27, 29-30, 33, 36-37, 41-42, 44; Ex. B at 22-24, 27, 32.)

> 2. **Defendant's Guarantee Pay Policy Violates the FMLA Because it Forces Employees Who Take FMLA Leave to Use**

13

### **Entitlements to Avoid The Higher Penalty for Weekend FMLA Leave.**

"At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Dyer* at 476, quoting *Bryson*, 498 F.3d at 569-70, citing 29 U.S.C. § 2614(a)(1).

Under the Guarantee Pay policy, employees who take weekend FMLA leave are required to use an entitlement (vacation pay or another form of paid time off) to avoid losing a full week of Guarantee Pay. This violates the FMLA because an employee who is required to exhaust an entitlement to avoid losing a full week of Guarantee Pay for taking FMLA leave has not been "reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Id.*

"Benefits accrued at the time leave began ... must be available to an employee upon return from leave.'" *Dyer at 477 (6th Cir.),* quoting C.F.R. § 825.215(d)(2). "The FMLA defines 'employment benefits' expansively to mean 'all benefits provided or made available to employees by an employer, including ... sick leave, [and] annual leave,' whether provided by practice or written policy." *Id.*, quoting 29 U.S.C. § 2611(5). As such, entitlements are employment benefits under the act. Defendant's Guarantee Pay policy violates the FMLA because it requires Plaintiffs to use an entitlement concurrently with weekend FMLA leave lest they lose an entire week of Guarantee Pay (Ex. A 51-53, Ex. B 40-43. Defendant's Motion for Summary Judgment should be denied.

### 3. Defendant's Guarantee Pay "Penalty" Constitutes Direct or Indirect Evidence of Systemic FMLA Retaliation.

Plaintiffs can establish an FMLA retaliation claim with direct or indirect evidence. *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 707 (6th Cir.2008). Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Laderach v. U–Haul of Nw. Ohio,* 207 F.3d 825, 829 (6th Cir.2000) (internal quotation marks omitted).

> The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [FMLA leave], but also that the employer acted on that predisposition. *DiCarlo v. Potter,* 358 F.3d 408, 415 (6th Cir.2004) (internal quotation marks and citations omitted). If an employee successfully presents direct evidence that the employer acted with discriminatory motive, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 382 (6th Cir.2002).

*Demyanovich v. Sajar Plastics, Inc.*, 747 F.3d 419, 432 (6th Cir. 2014).

      i. **Defendant's Guarantee Pay Policy Constitutes Direct Evidence of FMLA Retaliation.**

In the present case, Defendant admits that it systemically deploys a higher "penalty" to employees who require FMLA leave during weekend hours. (Gorneault Dep. at 100:12-101:8.) As such, it is indisputable that Defendant was predisposed to discriminate on the basis of Plaintiffs' FMLA leave usage. It is also clear that Defendant acted on that disposition in applying its policy to Plaintiffs to punish them for taking FMLA leave on the weekend.

Defendant has proffered no evidence to support an assertion that it would have applied its policy to Plaintiffs even had they not taken FMLA leave on the weekend. Rather, Defendant asserts in its memorandum in support of summary judgment that, "If an extra board member marks off from availability for 'any non-compensated reason' (including FMLA leave), and that Engineer

15

misses a call, his or her Guarantee Pay will be reduced." (Doc. 15-1, Mem. Supp. MSJ, at 21, quoting Declaration of John Johnson.) But in response to Plaintiff's interrogatories, Defendant admits that it treats several forms of unpaid leave more favorably than uncompensated FMLA leave. If a T&E employee requires unpaid FMLA leave on the weekend and misses work they lose ½ of their two-week Guarantee Pay period as a penalty. Yet, if a T&E employee avails himself of an unpaid Demand Day Off, unpaid short-term Military leave, or unpaid Union Business, during the weekend hours, he loses only one day for that leave (1/14th of his two-week guarantee day period). He is not subjected to the higher penalty that an employee who needs FMLA leave on the weekend suffers. (Def. Resp. Int. No. 1, attached as "Ex. D"; Gorneault Dep. at 99:01-100:19.) As such, Defendant's proffered nondiscriminatory justification of its Guarantee Pay Policy constitutes an admission of FMLA discrimination and Defendant's Motion for Summary Judgment should be denied.

### ii. Defendant's Guarantee Pay Policy Provides Indirect Evidence of FMLA Retaliation.

Sufficient evidence exists also to support Plaintiffs' claim under the *McDonnell Douglas* burden-shifting framework where no direct evidence of discrimination presents. Plaintiffs can accomplish as much by establishing a genuine issue of material fact as to whether: (1) he engaged in protected activity, (2) his employer was aware of the protected activity, (3) he was subject to an adverse employment action, and (4) there was a causal nexus between the protected activity and the adverse employment action. *Demyanovich* at 433 (6th Cir. 2014). The "burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

16

In the present case there can be no dispute that (1) Plaintiffs engaged in a protected activity by availing themselves of FMLA leave on the weekend. This is evidenced by the fact that Defendant admits to assessing a higher penalty to Plaintiffs for taking FMLA leave on weekends during Guarantee Pay periods. (Gorneault Dep. at 99:01-100:19 and Ex. A 19, Ex. B 19). For the same reason, there can be no dispute that (2) Defendant was aware that Plaintiffs took FMLA leave on those weekends (Ex. A at 23-27, 29-30, 33, 36-37, 41-42, 44; Ex. B at 22-24, 27, 32.). Similarly, Defendant admits by the very substance of its Guarantee Pay weekend FMLA "penalty" that (3) Plaintiffs suffered an adverse employment action in being deprived an entire week's Guarantee Pay. (Ex. A 51-53, Ex. B 40-43) *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)(an action that "might have dissuaded a reasonable worker from" taking protected activity). Finally, also by nature of Defendant's own admissions, Plaintiffs can establish that they suffered a higher penalty for taking FMLA leave on the weekend because it is Defendant's admitted policy to deploy that higher penalty to individuals who use FMLA leave during weekends. (Gorneault Dep. at 99:01-100:19)

Defendant does not assert a legitimate non-discriminatory reason for depriving Plaintiffs of a week's pay for requiring weekend FMLA leave. Rather, Defendant admits that it penalizes employees for taking FMLA leave on the weekends. And as noted above, Defendant treats employees who avail themselves of FMLA leave less favorably than employees who take other forms of unpaid leave under its Guarantee Pay policy. For these reasons, Defendant's Motion for Summary Judgment should be denied.

### C. In Addition To Interfering With Plaintiffs' FMLA Rights and Retaliating Against Plaintiffs for Taking Weekend FMLA Leave, Defendant's Motion for Summary Judgment Should be Denied

17

### Because Defendant's Guarantee Pay Policy Does Not Treat "Any Type of Unpaid Leave" The Same As Unpaid FMLA Leave.

The FMLA not only prohibits an employer's interference with employees' FMLA rights by dissuading employees from taking FMLA leave via consequential deprivation of an employment benefit and retaliation against employees for taking FMLA leave. It also requires Defendant to treat FMLA leave no less favorably than other forms of unpaid leave. *See Dyer* at 478 (6th Cir.)

Defendant argues that its policy "does not discriminate against employees for using leave under the FMLA but applies across-the-board to all employees who take noncompensated leave." (Def. Mem. Supp. MSJ.) But as already noted, this simply is not true by Defendant's own admission in response to Plaintiffs' Interrogatory No. 1. (Ex. A, at chart.)

If a T&E employee requires unpaid FMLA leave on the weekend and misses work, he loses ½ of his two-week Guarantee Pay period as a penalty. Yet, if a T&E employee avails himself of an unpaid Demand Day Off, unpaid short-term Military leave, or unpaid Union Business, during the weekend hours, he loses only one day for that leave (1/14th of his two-week guarantee day period). He is not subjected to the higher penalty that an employee who needs FMLA leave on the weekend suffers. (Ex. D at Resp. Int. No. 1; Gorneault Dep. at 99:01-100:19.) As such, Defendant's Motion for Summary Judgment should be denied.

### III. CONCLUSION

For the reasons stated, Plaintiffs respectfully request that this Court deny Defendant's Motion for Summary Judgment of portions of Plaintiffs' Count I which are based on Plaintiffs' claims that (a) CSXT's attendance policy violates the FMLA (Compl. ¶¶ 16-18, 72, 111, 133) and (b) CSXT's guarantee policy violates the FMLA (Compl. ¶¶ 12-15, 65, 107, 132).

Respectfully submitted,

*/s/ Joseph F. Albrechta*
Joseph F. Albrechta (0008478)
ALBRECHTA & COBLE, Ltd.
2228 Hayes Avenue, Suite A
Fremont, Ohio 43420
Tel: 419.332.9999 / Fax: 419.333.8147
*jalbrechta@lawyer-ac.com*
*kwitte@lawyer-a.com*

*/s/ Tod J. Thompson*
Tod J. Thompson (0076446)
Tod J. Thompson, Atty. at Law
810 Sycamore St., 5th Floor
Cincinnati, OH 45202
Tel: (513) 322-4348 / Fax: (513) 263-9001
*tod@tthompsonlaw.com*