## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| ANTHONY SCHOBERT, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:19-cv-00076-DRC |
| | ) | |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Donald J. Munro (*pro hac vice*)
Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
dmunro@jonesday.com
tchiavetta@jonesday.com

Elizabeth L. Dicus (0081219)
325 John H. McConnell Blvd.,
Suite 600
Columbus, Ohio 43215-2673
Telephone: (614) 281-3887
eldicus@jonesday.com

*Attorneys for Defendant CSX
Transportation, Inc.*

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................ 3

I.    PLAINTIFFS' NEW THEORIES ARE UNTIMELY AND MERITLESS
REGARDLESS ................................................................................................ 3

    A.    Parties Cannot Assert New Claims or Theories of Liability in Response to
a Motion for Summary Judgment .......................................................... 3

    B.    Even If They Were Timely, Plaintiffs' Claims Are Meritless .............................. 5

        1.    Plaintiffs cannot show that either the guarantee policy or the
attendance policy treats FMLA leave worse than other equivalent
forms of leave. ......................................................................... 6

            a.    Equivalency does not turn solely on whether the leave is
paid or unpaid. ............................................................... 6

            b.    The types of absences cited by Plaintiffs are not equivalent
to FMLA leave or cannot otherwise establish FMLA
liability. ............................................................... 9

        2.    Requiring employees to use paid leave to remain fully eligible for
the guarantee and for the Good Attendance Credit does not violate
the FMLA ................................................................................. 14

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON COUNT I ............... 14

    A.    CSX's Attendance Policy Is Distinguishable From the One in *Dyer* ................. 15

    B.    The Guarantee Policy Is Expressly Sanctioned by Regulation ........................... 16

CONCLUSION ............................................................................................................ 18

## TABLE OF AUTHORITIES

**Page**

CASES

*Bailey v. Pregis Innovative Packaging, Inc.*,
  600 F.3d 748 (7th Cir. 2010) ...................................................................................16

*Bell v. CSX Transp., Inc.*,
  No. 18-cv-744, 2019 WL 2146917 (D. Md. May 16, 2019)............................................11, 13

*Bridgeport Music, Inc. v. WB Music Corp.*,
  508 F.3d 394 (6th Cir. 2007) ................................................................................4, 5

*Clarkson v. Alaska Airlines, Inc.*,
  No. 2:19-cv-0005, 2021 WL 2080199 (E.D. Wash. May 24, 2021) .........................11, 12, 13

*Darosa v. Admiral Packaging, Inc.*,
  2019 WL 1984286 (D.R.I. May 2, 2019) ........................................................................17

*Franks v. Indian Rivers Mental Health Ctr.*,
  No. 08-cv-1035, 2012 WL 4736444 (N.D. Ala. Sept. 30, 2012)............................................17

*Hoefert v. Am. Airlines, Inc.*,
  438 F.Supp.3d 724 (N.D. Tex. 2020) .............................................................................11, 12

*Hoffman v. O'Malley*,
  447 F.Supp.3d 629 (N.D. Ohio 2020), *aff'd*, 849 F. App'x 535 (6th Cir. 2021)..................4, 5

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
  551 U.S. 224 (2007)..............................................................................................7

*Renner v. Ford Motor Co.*,
  516 F. App'x 498 (6th Cir. 2013) ...............................................................................4

*Tchankpa v. Ascena Retail Group, Inc.*,
  951 F.3d 805 (6th Cir. 2020) ....................................................................................4

*Thurman v. BMO Capital Markets Corp.*,
  No. 10-cv-5727, 2011 WL 1004652 (N.D. Ill. Mar. 16, 2011) ............................................17

*Tucker v. Union of Needletrades, Indus., and Textile Employees*,
  407 F.3d 784 (6th Cir. 2005) .....................................................................................4

*United States v. Caseer*,
    399 F.3d 828 (6th Cir. 2005) ........................................................................8

**STATUTES**

FMLA ............................................................................................... *passim*

38 U.S.C. § 4316 ..........................................................................................9

**OTHER AUTHORITIES**

20 C.F.R. § 1002.150 ..............................................................................9, 11

29 C.F.R. § 825.215 .................................................................1, 7, 14, 17

29 C.F.R. § 825.215(c) ........................................................................ passim

29 CFR § 825.220 ........................................................................................7

Family and Medical Leave Act of 1993; Final Rule,
    73 Fed. Reg. 67934, 67985 (Nov. 17, 2008)................................8, 10

Three years ago, in response to CSX's pre-discovery motion for summary judgment on their attendance policy and guarantee policy claims, Plaintiffs claimed they needed discovery in order to respond to it.  Now, having had ample opportunity to investigate their claims, Plaintiffs largely stray from them, pivoting instead to new claims and theories of liability.  In their Complaint, Plaintiffs pled a single FMLA interference claim (Count I) alleging that the attendance policy and guarantee policy were each unlawful insofar as FMLA leave results in the loss of something – the Good Attendance Credit and guaranteed earnings, respectively – which, they say, discourages employees from taking FMLA leave.  In opposing summary judgment, however, Plaintiffs now argue that the policies are unlawful not only for that reason, but also for entirely new reasons: (1) the policies each allegedly treat certain other unpaid absences more favorably than FMLA leave, (2) employees taking FMLA leave must use a paid entitlement to avoid any potential loss of guaranteed earnings and to remain eligible for the Good Attendance Credit, and (3) the guarantee policy is retaliatory.  None of these claims were pled in the Complaint, and it is too late to assert them now.  Even if they were timely, however, the claims have no merit.

"[I]f a bonus or other payment is based on the achievement of a specified goal such as hours worked . . . or perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify for FMLA leave."  29 C.F.R. § 825.215(c).  Plaintiffs claim that CSX's guarantee policy and attendance policy run afoul of this regulation, because certain types of unpaid absences – Demand Days Off, time off for union business, and military leave – are treated more favorably than unpaid FMLA leave.  In making this argument, however, Plaintiffs wrongly assume that equivalency is based solely on whether the leave is paid

or unpaid.  It is not, as the regulatory text makes clear.  And, when considering other factors, it quickly becomes apparent that no reasonable juror could find that any of the other types of unpaid absences identified by Plaintiffs is remotely equivalent to FMLA leave.

Plaintiffs' paid entitlement theory is equally baseless.  An employee can choose to substitute paid leave for FMLA leave so as to avoid any potential loss of guaranteed earnings or of the Good Attendance Credit.  Plaintiffs claim that this is unlawful, because the FMLA requires employers to restore employees to an equivalent position with equivalent employment benefits, and an employee who substitutes paid leave for FMLA leave returns to work with less paid leave than he had beforehand.  But this argument ignores both the plain language of the statute (which provides that employers may require or employees may choose to substitute paid leave for FMLA leave) and the plain language of the governing regulation (which provides that benefits accrued prior to leave must be available upon return only "to the extent not substituted for FMLA leave").  The theory is not viable.

Just as the newly-pled claims fail, so, too, do the claims pled initially.  In opposing summary judgment on the attendance policy claim, Plaintiffs rely heavily on the Sixth Circuit's opinion in *Dyer*, but that case is distinguishable.  FMLA leave cannot result in the loss of an accrued benefit, and, in *Dyer*, perfect attendance credit was accrued on a rolling basis and lost if the employee took FMLA leave.  Under CSX's attendance policy, by contrast, employees do not accrue perfect attendance credit; it is awarded, if at all, on an "either/or" basis and only at the end of a calendar month.  The two policies are materially different.

Lastly, Plaintiffs argue that the guarantee policy is unlawful because it penalizes employees by reducing their guaranteed earnings if they take unpaid FMLA leave and miss work as a result.  But, as described above, FMLA leave can, under some circumstances, be used as a

2

basis to deny certain payments to employees, and those circumstances are present here. CSX's

guarantee policy is expressly sanctioned by regulation and does not violate the FMLA.

Summary judgment should be granted on Count I.

**ARGUMENT**

**I.     PLAINTIFFS' NEW THEORIES ARE UNTIMELY AND MERITLESS REGARDLESS**

In opposing summary judgment, Plaintiffs largely try to switch horses. They argue that

the guarantee policy and attendance policy are unlawful because FMLA leave is allegedly treated

worse than other types of leave, and because employees who take FMLA leave must use a paid

entitlement to remain eligible for a benefit. But these claims were not pled in the Complaint, so

they cannot possibly provide a basis to deny summary judgment. And, even if they had been

properly pled, the claims fail.

**A.     Parties Cannot Assert New Claims or Theories of Liability in Response to a Motion for Summary Judgment**

In their Complaint, Plaintiffs assert a single FMLA interference claim challenging CSX's

guarantee policy and attendance policy solely on the basis that employees who take FMLA leave

allegedly lose a benefit (Count I).[1] *See* Compl. ¶¶ 12-18, 154-59. Plaintiffs did not allege that

either policy treated FMLA leave less favorably than other forms of leave, or that either policy

was retaliatory. *See id.*; Nov. 30, 2020 Opinion and Order, Doc. 46 at PageID 673-74

(describing the Complaint's allegations regarding CSX's guarantee and attendance policies).

Nor did Plaintiffs allege that either policy was unlawful insofar as employees must use a paid

---

[1] In addition to maintaining extra boards for engineers, CSX also maintains extra boards for conductors. However, as Plaintiffs admit (Opp. 4), the two types of boards are governed by different collective bargaining agreements and operate in different ways. Plaintiffs each allege that, during the limitations period, they were employed as locomotive engineers (Doc. 60-1 at PageID 3952, ¶ 4 (Schobert); Doc. 60-2 at PageID 3979, ¶ 4 (York)), and that, "[a]t all times relevant to their Complaint, Plaintiffs' Guarantee Pay was governed by the BLE [Brotherhood of Locomotive Engineers] agreement." (Opp. 4.) Conductor extra boards are therefore irrelevant to this motion.

3

entitlement to remain fully eligible for guarantee pay or the Good Attendance Credit.  Yet, in opposing summary judgment, Plaintiffs try to assert all of these claims.  *See* Opp. 10, 17-18 (alleging that the attendance policy and guarantee policy treat FMLA leave "less favorably than other equivalent leave"), 15-17 (alleging that the guarantee policy is retaliatory), 9-11, 13-14 (alleging that the attendance policy and guarantee policy are unlawful insofar as employees who take FMLA leave must use paid entitlements to remain eligible for a benefit).  This is not allowed.

At summary judgment, parties are bound by the claims alleged in the complaint.  *See Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 817-818 (6th Cir. 2020).  They can neither allege new claims nor assert new theories of liability for existing claims.  *See Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013) ("It is well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment . . . ."); *Tchankpa*, 951 F.3d at 817 (where complaint alleged only disability discrimination, district court properly dismissed various other ADA claims asserted at summary judgment); *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment . . . ."); *Tucker v. Union of Needletrades, Indus., and Textile Employees*, 407 F.3d 784, 788-89 (6th Cir. 2005) (district court properly refused to consider promissory estoppel claim raised for the first time in response to summary judgment); *Hoffman v. O'Malley*, 447 F.Supp.3d 629, 636 (N.D. Ohio 2020), *aff'd*, 849 F. App'x 535 (6th Cir. 2021).

In *Bridgeport Music*, the plaintiff brought a copyright infringement action alleging that certain song lyrics had been interpolated without permission in a subsequent recording, the copyright of which was partially owned by the defendant, Universal.  *See* 508 F.3d at 396-97.

The copyright infringement claim was based solely on the inclusion of the subsequent recording on two studio albums. *Id.* at 396-97, 400. In its complaint, the plaintiff alleged that royalties received by Universal were evidence that it had licensed the use of the recording on the studio albums. *Id.* At summary judgment and on appeal, however, plaintiff asserted that Universal's receipt of royalties was not only circumstantial evidence of copyright infringement but also direct evidence of it. *Id.* at 399-400. Because this theory of liability had not been pled in the complaint, the Sixth Circuit refused to entertain it. *Id.* at 400. Summary judgment was affirmed.

Similarly, in *Hoffman*, the plaintiff alleged her employment was terminated because of her age. 447 F.Supp.3d at 632-34. Her claim was premised on the theory that younger employees who had engaged in similar misconduct were not dismissed. *Id.* at 634. At summary judgment, however, the plaintiff argued she could establish a prima facie case of discrimination through evidence that she was replaced by a significantly younger person, an allegation that was not pled in her Complaint. *Id.* at 636. Applying Sixth Circuit precedent, the district court refused to consider this theory at summary judgment, and her claims were dismissed. *Id.*

So too here, in their summary judgment opposition, Plaintiffs assert entirely new claims and theories of liability. Specifically, Plaintiffs claim that the guarantee pay policy is retaliatory (despite pleading only an FMLA interference claim), and that both policies are unlawful insofar as (1) FMLA leave is treated less favorably than other forms of leave, and (2) employees must use a paid entitlement to remain fully eligible for guarantee pay or the Good Attendance Credit. It is too late to assert these claims. None of them can save Count I from summary judgment.

### B. Even If They Were Timely, Plaintiffs' Claims Are Meritless

Regardless, Plaintiffs' claims have no merit. Plaintiffs argue (Opp. 10-11, 17-18) that the guarantee policy and the attendance policy are unlawful insofar as the policies each treat certain

types of leave or absences better than FMLA leave. This disparity, Plaintiffs claim (Opp. 15-17), also renders the guarantee policy retaliatory. These claims have no merit.

> **1. Plaintiffs cannot show that either the guarantee policy or the attendance policy treats FMLA leave worse than other equivalent forms of leave.**

Because guarantee pay falls within the scope of 29 C.F.R. § 825.215(c), it can lawfully be denied to employees who take FMLA leave "unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave." 29 C.F.R. § 825.215(c). Plaintiffs argue that the guarantee pay policy does not satisfy this condition because certain types of unpaid time off – Demand Days Off, short-term military leave, and time off for union business – are treated more favorably than unpaid FMLA leave.[2] Similarly, with respect to the attendance policy, Plaintiffs note that Demand Days Off and absences due to a work-related injury or illness supported by a valid doctor's note do not disqualify an employee from the Good Attendance Credit. However, with the possible exception of absences attributable to work-related injuries or illnesses – which cannot provide the basis for an FMLA interference or retaliation claim for other reasons – none of the other types of unpaid absences is equivalent to FMLA leave. CSX can therefore lawfully treat them differently than FMLA leave.

> **a. Equivalency does not turn solely on whether the leave is paid or unpaid.**

Contrary to Plaintiffs' suggestion (Opp. at 11), *Dyer* did not hold that "equivalent leave status" under 29 CFR § 825.215(c) is determined by whether leave is paid or unpaid. That question was neither before the *Dyer* court nor resolved by it. Rather, *Dyer* merely suggested in

---

[2] Specifically, whereas an employee who takes unpaid FMLA leave on a Friday, Saturday, or Sunday and who misses work as a result loses half of his guarantee, a Demand Day Off, military leave, or time off for union business results in the employee losing only 1/14 of the guarantee, regardless of the day of the week. (Doc. 60-4 at PageID 4005-07.)

dicta that the regulations "imply" that whether leave is paid or unpaid could be determinative of equivalency, 934 F.3d at 478, without holding that the paid/unpaid factor is necessarily dispositive of equivalency. Moreover, the court's dicta drew this implication from an example in a different regulation—29 CFR § 825.220(c)—that does not include the term "equivalent leave status" (or any form of the word "equivalent" for that matter).

The regulation that actually uses the term "equivalent leave status"—which Plaintiffs never directly cite—is 29 CFR § 825.215, specifically subsection (c). And that regulation, read as a whole, makes clear that equivalency means "virtually identical," "substantially similar," or close to the "same." Indeed, the regulation's various subsections describe equivalency in precisely those terms. *See* 29 CFR § 825.215(a) ("Equivalent position" subsection provides: "An equivalent position is one that is *virtually identical* to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve *the same or substantially similar* duties and responsibilities . . . ."); *id.* § 825.215(c) ("Equivalent benefits" subsection provides: "An employee is entitled to be restored to a position with *the same or equivalent* pay premiums, such as a shift differential."); *id.* § 825.215(d) ("Equivalent benefits" subsection provides that "benefits must be resumed in the *same* manner and at the *same* levels"); *id.* § 825.215(e) ("Equivalent terms and conditions of employment" subsection provides, *e.g.*, that "[a]n equivalent position must have *substantially similar* duties, conditions, responsibilities, privileges and status as the employee's original position"); *id.* § 825.215(f) (referring to "[e]quivalent terms and conditions of employment" requirement from subsection (e) as "[t]he requirement that an employee be restored to *the same or equivalent* job with the same or equivalent pay, benefits, and terms and conditions of employment") (all emphasis added); *cf. Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)

("identical words and phrases within the same statute should normally be given the same meaning").

In addition, the actual example that the regulations give of "equivalent leave status" in § 825.215(c) contrasts "paid vacation leave for a non-FMLA purpose" with "paid vacation leave for an FMLA-protected purpose." 29 CFR § 825.215(c). If all paid leave statuses were equivalent, however, the word "vacation" would be superfluous. *See, e.g.*, *United States v. Caseer*, 399 F.3d 828, 851 (6th Cir. 2005) (invoking the "fundamental canon . . . that meaning should not be given to a word in a statute, or regulation, that 'renders other provisions of the same statute inconsistent, meaningless or superfluous'").

Nor is it the case that even if "equivalent" means virtually identical or substantially similar, "leave status" refers to only two forms of statuses—paid and unpaid—such that all forms of unpaid leave are therefore equivalent. Any such strained reading of "leave status" would be at odds with the Department of Labor's guidance that "[e]quivalent leave status refers, for example, to vacation leave, paid time-off, or sick leave"—*i.e.*, those leave statuses are described more specifically than "unpaid leave." The Family and Medical Leave Act of 1993; Final Rule, 73 Fed. Reg. 67934, 67985 (Nov. 17, 2008). It would also be at odds with even how Plaintiffs use the term. For instance, Plaintiffs do not suggest that FMLA leave is the same leave status as Demand Day Off, short-term military leave, and union business. Rather, they argue that these different leave statuses are "equivalent." *See* Opp. 11.

Interpreting "equivalency" to mean more than just "paid or unpaid" is also consistent with regulatory guidance issued by the Department of Labor under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Under USERRA, during a period of military service, an employee is entitled to non-seniority benefits "generally provided by the

8

employer . . . to employees having similar seniority, status, and pay who are on furlough or leave

of absence . . . ." 38 U.S.C. § 4316(b). Where these benefits vary according to the type of leave,

"the employee must be given the most favorable treatment accorded to any comparable form of

leave when he or she performs service in the uniformed services." 20 C.F.R. § 1002.150. In

determining whether two types of leave are comparable, "the duration of the leave may be the

most significant factor to compare[,]" but "other factors such as the purpose of the leave and the

ability of the employee to choose when to take the leave should also be considered." *Id.*

Comparability is a lower standard than equivalency. Thus, if the factors identified in the

USERRA regulation are relevant to whether two types of leave are "comparable," they must also

be relevant to whether two types of leave are "equivalent."

In sum, if equivalency turned solely on whether leave was paid or unpaid, the Department

of Labor could have easily said so. Instead, from the regulatory text itself, it is clear that

equivalency also takes into account the purpose of the leave and other factors.

        b.      The types of absences cited by Plaintiffs are not equivalent to
                   FMLA leave or cannot otherwise establish FMLA liability.

The Department of Labor has given two specific examples of "equivalent leave status."

As already mentioned, the applicable regulation gives as one example an employee who used

"paid vacation leave for a non-FMLA purpose" and an employee who used "paid vacation leave

for an FMLA-protected purpose." 29 C.F.R. § 825.215(c). Similarly, in adopting the regulation,

the Department of Labor explained the meaning of the phrase as follows:

> Equivalent leave status refers, for example, to vacation leave, paid time-off, or
> sick leave. Leave for a reason that does not qualify as FMLA leave refers, for
> example, to vacation or sick leave that is not for an FMLA purpose (*i.e.*, the
> vacation or sick leave is not also FMLA leave). Thus, for example, if an
> employer policy does not disallow an attendance bonus to an employee who takes
> vacation leave, the employer cannot deny the bonus to an employee who takes
> vacation leave for an FMLA purpose (*i.e.*, substitutes paid vacation leave for
> FMLA leave). However, if an employer's policy is to disqualify all employees

who take leave without pay from such bonuses or awards, the employer may deny
the bonus to an employee who takes unpaid FMLA leave.

73 Fed. Reg. 67934, 67985.

Plaintiffs do not dispute that an employee who substitutes paid leave for unpaid FMLA leave remains fully eligible for the guarantee and for the Good Attendance Credit. *See* Opp. 3; Gorneault Dep. 54:25-55:24, Doc. 53 at PageID 799 (eligible for the guarantee); Tingley Dep. 51:14-52:20, 77:21-78:9, Doc. 57 at PageID 2233, 2239-40 (eligible for the Good Attendance Credit). Nor do Plaintiffs dispute that both the guarantee policy and the attendance policy treat an employee who takes sick leave for a non-FMLA purpose the same as an employee who takes sick leave for an FMLA-protected purpose. *See* Doc. 60-4 at PageID 4006, 4021. By having these features, the guarantee policy and the attendance policy pass the only two specific tests for legality found in the regulation and its accompanying guidance.

Even so, Plaintiffs argue that the policies are unlawful, because certain types of unpaid leave or time off – Demand Days Off, time off for union business, and military leave, in the case of the guarantee policy, and Demand Days Off and certain absences due to a work-related injury or illness, in the case of the attendance policy – are treated more favorably than FMLA leave. Nevertheless, besides pointing out that all of these absences are unpaid, Plaintiffs do not even attempt to establish that any of them have anything in common with FMLA leave. Nor could Plaintiffs establish equivalency if they tried. As a result, even if Plaintiffs' retaliation and disparate treatment claims had been properly pled, summary judgment would still be warranted.

A ***Demand Day Off*** is awarded to engineers who maintain perfect attendance for an entire calendar quarter. Unlike FMLA leave, Demand Days Off must be scheduled in advance and requests to take one can be denied based on the needs of service. *See* Doc. 58-7 at PageID 3211 (Demand Days Off must be requested more than a week in advance); *id.* at PageID 2986

10

(requested DDO can be refused if "it would cause service disruption"); *see also* Gorneault Decl.

¶ 3, Doc. 64 at PageID 4075 (hundreds of DDO requests denied over the past 5 years); *cf.*

*Clarkson v. Alaska Airlines, Inc.*, No. 2:19-cv-0005, 2021 WL 2080199, at *8 (E.D. Wash.

May 24, 2021) (leave that could be taken only at management's discretion not comparable to

leave "automatically granted"); *Hoefert v. Am. Airlines, Inc.*, 438 F.Supp.3d 724, 740 (N.D. Tex.

2020) (leave subject to "participation limit" so as not to "dramatically interrupt[ ]" the

employer's operation not comparable to unlimited military leave). In addition, whereas

intermittent FMLA leave by nature is unpredictable, Demand Days Off have set start and stop

times and never exceed a single day. *See* Doc. 58-7 at PageID 3102) ("All . . . Demand Day(s) . .

. will start at 0001 unless otherwise authorized."); *cf.* 20 C.F.R. § 1002.150 (duration of the leave

"may be the most significant factor" in "determin[ing] whether any two types of leave are

comparable"); *Clarkson*, 2021 WL 2080199, at *6 (leaves with "significant differences in

duration and frequency" are not comparable). Given these differences, "a DDO is in no wise

equivalent to FMLA leave[.]" *Bell v. CSX Transp., Inc.*, No. 18-cv-744, 2019 WL 2146917, at

*6 (D. Md. May 16, 2019).

**Time off for union business** is available only for a select few employees: those who hold

union leadership positions – and can be used only for certain defined tasks.[3] *See* Doc. 58-7 at

PageID 3046 (union officials allowed to mark off union business only "to perform elected duties

such as: representing members in investigations, holding claims conferences, or attending

Labor/Management meetings"). The CBA expressly provides that "time spent by a Union

Officer when marked off Union Business" does not "cause the union officer to be considered

---

[3] There are currently 82 BLET local chairmen eligible to take union business leave. (Tingley Decl. ¶ 2, Doc. 62 at PageID 4032.) By contrast, thousands of T&E employees take FMLA leave each year. *See* Johnson Decl. ¶ 5, Doc. 63 at PageID 4067.

unavailable for any purpose." *Id.* at PageID 3047.  In order to mark off for union business on a Friday, Saturday, or Sunday – *i.e.*, one of the days on which such a mark-off is treated differently than FMLA leave by the guarantee policy – advance notice must be given.  *See id.* at PageID 3046 (union official must notify CSX of any weekend union business mark-offs either by 12:00 p.m. on Monday (for mark-offs that are known in advance) or by 12:00 p.m. on Thursday (for all other mark-offs), and must explain "the nature and necessity" of the mark-off).  FMLA leave, by contrast, is not subject to these same requirements.  *See* CSX FMLA Policy, Doc. 15-2 at PageID 179-83.  An employee approved for intermittent FMLA leave can mark off on the weekend without any advance notice and does not need to provide any additional information to substantiate the mark-off.  (Johnson Decl. ¶ 3, Doc. 63 at PageID 4067.)  In addition, certain union business mark-offs are subject to the "needs of service."  *See* CBA Art. 40, Note 1, Doc. 53-6 at PageID 1121.  These differences alone render union business mark-offs and FMLA leave inequivalent.  *Cf. Clarkson*, 2021 WL 2080199, at *8 (leave that "tend[ed] to occur with little to no notice" was not comparable to leave that was typically scheduled in advance); *Hoefert*, 438 F.Supp.3d at 740 (leave structured so as to avoid "dramatic[ ] interrupti[ons]" to employer's operations not comparable to leave unencumbered by same limits).

    Moreover, although union business is not compensated by CSX, employees performing it are paid by the union for this time, and the time is spent on CSX-related business.  *See* Doc. 60-4 at PageID 4022.  FMLA leave, on the other hand, is unpaid (unless the employee substitutes paid leave, in which case no deduction to the guarantee is made (*see* Gorneault Dep. 54:25-55:24, Doc. 53 at PageID 799)), and is taken purely for personal reasons.  The two types of leave are not equivalent.

***Military leave*** can be taken by CSX employees serving in the United States Armed Forces, either on active duty or in the reserves, or in the National Guard.  (Johnson Decl. ¶ 2, Doc. 63 at PageID 4066.)  Employees taking military leave are required to "provide notice as soon as they have knowledge of their upcoming military service unless giving such notice is prevented by military necessity or is otherwise impossible under the circumstances."  *Id.*  By contrast, employees approved for intermittent FMLA leave can – and frequently do – mark off at a moment's notice, causing greater disruption to CSX's operations.  *Id.* ¶ 3; *cf. Clarkson*, 2021 WL 2080199, at *8.  Military leave and FMLA leave also vary substantially in frequency and duration.  In 2019, for example, 206 T&E employees took military leave, and approximately 90% of the total military leave taken was attributable to long-term leaves of 30 days or more.  (Tingley Decl. ¶ 6(d), Doc. 62 at PageID 4033.)  That same year, by contrast, 3,898 T&E employees took FMLA leave, and the average mark-off lasted 1.43 days.[4]  (Johnson Decl. ¶ 5, Doc. 63 at PageID 4067.)  The two types of leave are not equivalent.

Employees who are off work due to a ***work-related injury or illness*** and whose absence is substantiated by a valid doctor's note remain eligible for the Good Attendance Credit.  Of course, certain work-related injuries or illnesses could constitute a "serious health condition" under the FMLA such that an employee missing work for this reason would potentially qualify for FMLA leave.  On its face, then, the attendance policy does not discriminate against employees because of FMLA leave.  Rather, "[t]he dividing line between eligibility and

---

[4] The 2019 data is not an outlier.  *Compare* Tingley Decl. ¶ 6(a), Doc. 62 at PageID 4032 (274 T&E employees took military leave in 2016, and approximately 74% of the total military leave taken was attributable to long-term leaves of 30 days or more); *id.* ¶ 6(b) (258 T&E employees took military leave in 2017, and approximately 78% of the total military leave taken was attributable to long-term leaves of 30 days or more); *id.* ¶ 6(c) (233 T&E employees took military leave in 2018, and approximately 80% of the total military leave taken was attributable to long-term leave of 30 days or more) *with* Johnson Decl. ¶ 5, Doc. 63 at PageID 4067 (4,187 T&E employees took FMLA leave in 2016, and the average mark-off lasted 1.53 days); *id.* (4,012 T&E employees took FMLA leave in 2017, and the average mark-off lasted 1.53 days); *id.* (3,739 T&E employees took FMLA leave in 2018, and the average mark-off lasted 1.53 days).

ineligibility to earn good attendance credits for sick leave is . . . work-related versus non-work-related illness or injury." *Bell*, 2019 WL 2146917, at \*6.  This does not violate the FMLA.

> ### 2. Requiring employees to use paid leave to remain fully eligible for the guarantee and for the Good Attendance Credit does not violate the FMLA.

Lastly, Plaintiffs argue (Opp. 9-10) that the challenged policies are unlawful insofar as employees must substitute paid leave for FMLA leave to avoid potentially losing guaranteed earnings or to remain eligible for the Good Attendance Credit.  This argument likewise fails. Plaintiffs' theory is that, because FMLA leave cannot result in the loss of benefits "accrued prior to the date on which the leave commenced," 29 U.S.C. § 2614(a)(2), employees must necessarily return from FMLA leave with the same amount of vacation and other paid leave as they had when they went out on FMLA leave.  That is not so.  The FMLA expressly provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave for [FMLA] leave . . . ."  29 U.S.C. § 2612(d)(2).  Thus, just because an employee might return from FMLA leave with less paid leave than he had previously does not mean that either the guarantee policy or the attendance policy violates the FMLA.  Indeed, the Department of Labor's regulations provide that paid leave substituted for FMLA leave is not one of the accrued benefits to which an FMLA leave-taker is entitled upon his return.  *See* 29 C.F.R. § 825.215(d)(2) ("Benefits accrued at the time leave began . . . (*e.g.*, paid vacation, sick or personal leave *to the extent not substituted for FMLA leave*) must be available to an employee upon return from leave.") (emphasis added).  Plaintiffs' theory is contrary to law.

## II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON COUNT I

In addition to being unable to prove the claims they did not plead, Plaintiffs are unable to prove the ones they did plead.  Summary judgment should therefore be granted.

**A.      CSX's Attendance Policy Is Distinguishable From the One in *Dyer***

In their opposition, Plaintiffs rely heavily on the Sixth Circuit's decision in *Dyer*, arguing that it requires denial of summary judgment on the attendance policy claim.  This is not so.  The Sixth Circuit's reasoning relied on the fact that the attendance policy at issue in *Dyer* involved the accrual of perfect attendance credit on a rolling basis, unlike CSX's attendance policy.  Because of this key difference, *Dyer* is not dispositive here.

In *Dyer*, an employee challenged a policy under which employees accrued perfect attendance credit on a rolling basis and received a one-point reduction in their overall attendance points upon accruing 30 days.  *See* 934 F.3d at 474.  Under the policy, however, FMLA leave caused the employee's perfect attendance day balance to be reset at zero.  *Id.* at 474-75.  By contrast, employees who took paid leave or certain other forms of unpaid leave continued accruing perfect attendance days during their absence.  *Id.* at 474.  As a result, an employee who had accrued 5 days of perfect attendance but who then took 3 days of unpaid FMLA leave would lose his accrued 5 days of credit upon returning to work whereas the same employee who took 3 days of paid vacation would return to work with 8 days of perfect attendance.

The FMLA provides that, whereas an employee is not entitled to accrue employment benefits during leave, "benefit[s] accrued prior to the date on which the leave commenced" must be available to the employee upon returning from leave.  29 U.S.C. § 2614(a)(2) & (3).  Applying this provision, the Sixth Circuit held that, because FMLA leave deprived an employee of "days of attendance he had accrued when [FMLA] leave began," a reasonable jury could conclude the policy interfered with employee's FMLA rights.  *Id.* at 477.

15

By contrast, under CSX's attendance policy, perfect attendance credit does not accrue but, rather, is awarded on a binary, "either/or" basis at the end of each month.[5] *See* CAPS Policy, Doc. 15-2 at PageID 171-73; *cf. Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 751 (7th Cir. 2010) (attendance credit based on 12 months of service did not accrue until it was actually awarded). Either an employee has had perfect attendance for the entire month, in which case he is awarded the Good Attendance Credit, or he has not had perfect attendance for the entire month, in which case he does not receive any credit.[6] *See id.* There is no "in between," like there was under the attendance policy in *Dyer*, where perfect attendance days accrued on a rolling basis. This material difference makes *Dyer* distinguishable.

## B. The Guarantee Policy Is Expressly Sanctioned by Regulation

Plaintiffs do not argue that the Sixth Circuit's holding in *Dyer* requires denial of summary judgment on the guarantee policy claim. Nor could they because, in *Dyer*, the Court was not analyzing an attendance-based payment policy (governed by 29 C.F.R. § 825.215(c)) but rather whether the use of FMLA leave cost the employee an accrued benefit (governed by 29 U.S.C. § 2614(a)(2)). 934 F.3d at 477. Instead, taking language from *Dyer* out of context, Plaintiffs argue (Opp. 12-13) that the guarantee policy is unlawful because it "penalizes" engineers who take FMLA leave on weekends by deducting 1/2 of their total guarantee, assuming the FMLA mark-off caused the employee to miss work. This argument has no merit.

---

[5] This interpretation is also consistent with the dictionary definition of "accrue," which is "[t]o come into existence as an enforceable claim or right." *Accrue*, BLACK'S LAW DICTIONARY (11th ed. 2019). Under CAPS, an employee has no claim to the Good Attendance Credit until after a calendar month in which he has no disqualifying absences.

[6] Because of this paradigm, in reality, unpaid FMLA leave does not always cause the employee to lose the Good Attendance Credit, because it might not have been the only disqualifying absence in the given month. Indeed, although each Plaintiff claims his FMLA leave cost him the Good Attendance Credit nearly every month, that is not true. *See* Tingley Decl. ¶ 9, Doc. 62 at PageID 4034 (in 25 of the 35 months in which Schobert did not receive the Good Attendance Credit, he would not have received it regardless of any FMLA leave); *id.* ¶ 40, Doc. 62 at PageID 4039 (in 8 of the 22 months in which York did not receive the Good Attendance Credit, he would not have received it regardless of any FMLA leave).

CSX's guarantee policy is specifically sanctioned by a Department of Labor regulation (29 C.F.R. § 825.215(c)), which provides that certain types of payments contingent on attendance or other goals can be denied on the basis of FMLA leave. *See* CSX Br. 21-23. Understanding fully the implications of this regulation, Plaintiffs claim it does not apply, because guarantee pay is not a "bonus" or "award" but rather a "benefit, the accrual of which . . . must be available to an employee upon return from FMLA leave." (Opp. 12-13.) This argument fails.

The regulation does not apply only to bonuses or awards; it also applies to "other payment[s] . . . based on the achievement of a specified goal." 29 C.F.R. § 825.215(c)(2); *see also Darosa v. Admiral Packaging, Inc.*, 2019 WL 1984286, at *4-5 (D.R.I. May 2, 2019) (applying regulation to annual raise premised on performance and other factors); *Thurman v. BMO Capital Markets Corp.*, No. 10-cv-5727, 2011 WL 1004652, at *3 (N.D. Ill. Mar. 16, 2011) (under 29 C.F.R. § 825.215(c), employer could lawfully deny raise to employee who missed work due to FMLA leave). Even if it is not a "bonus," guarantee pay is conditioned on a specified goal: remaining "available for service for an entire pay period (except on specified off days)." *See* CBA Art. 82.A.8, Doc. 15-2 at PageID 167; *cf. Franks v. Indian Rivers Mental Health Ctr.*, No. 08-cv-1035, 2012 WL 4736444, at *16 (N.D. Ala. Sept. 30, 2012) ("on-call pay is analogous to a production bonus, which, if based on performance, may be denied where the employee has not met the goal due to FMLA leave"). It is therefore precisely the type of payment that can be denied to an employee who takes FMLA leave, so long as the policy is not discriminatory. And, in practice, the guarantee policy treats employees who take FMLA leave no better or worse than employees who take equivalent non-FMLA leave. *See supra* Section I.B.1. The policy is therefore lawful.

17

**CONCLUSION**

For these reasons, the Court should grant summary judgment in CSX's favor on Count I.

Dated:   May 6, 2022

/s/ Elizabeth L. Dicus
Elizabeth L. Dicus (0081219)
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio  43215
Tel: (614) 469-3939 / Fax: (614) 461-4198
eldicus@jonesday.com

Donald J. Munro (*pro hac vice*)
Thomas R. Chiavetta (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
dmunro@jonesday.com
tchiavetta@jonesday.com

*Attorneys for Defendant*
*CSX Transportation, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2022, a true and accurate copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the following at their email address on file with the Court:

Tod J. Thompson, Attorney at Law, Ltd.
810 Sycamore Street, Floor Five
Cincinnati, Ohio 45202
tod@todthompsonlaw.com

Joseph F. Albrechta (0008478 OH)
ALBRECHTA & COBLE, Ltd.
2228 Hayes Avenue, Suite A
Fremont, Ohio 43420
jalbrechta@lawyer-ac.com

*Counsel for Plaintiffs*

*/s/ Elizabeth L. Dicus*