IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY SCHOBERT AND JOHN          :
YORK, individually and on behalf of :
those similarly situated, *et al.*,  :     Case No. 1:19-cv-76
                                     :
    *Plaintiffs*,                     :     Judge Jeffery P. Hopkins
                                     :
vs.                                  :
                                     :
CSX TRANSPORTATION, INC.,           :
                                     :
    *Defendant*.

## OPINION & ORDER

       This case involves workplace attendance policies and (un)paid leave. Pending before the Court is Defendant CSX Transportation ("CSXT") Inc's combined Motion for Judgment on the Pleadings, Motion for Summary Judgment, and/or Motion to Stay (the "Motion") (Doc. 15)—which has been resolved in part—along with Plaintiffs Anthony Schobert and John York's Response in Opposition (Doc. 60) and CSXT's Reply (Doc. 65).

       Before this case was transferred to the undersigned,[1] District Judge Douglas R. Cole issued an Opinion and Order (Doc. 46) on November 30, 2020 that **GRANTED** CSXT Judgment on the Pleadings as to Part I.A of its Motion (Doc. 15, PageID 126–291); **GRANTED IN PART AND DENIED IN PART** CSXT's Motion for Judgment on the Pleadings as to Part I.B of its Motion (*id.* at PageID130–34); **DENIED** CSXT Judgment on the Pleadings as to Part I.C of its Motion (*id.* at PageID 135); **GRANTED** Plaintiffs' Motion for Discovery (Doc. 21); **DEFERRED** ruling on CSXT's Motion for Summary Judgment as

---

[1] This case was transferred to the undersigned on December 21, 2022. Doc. 66.

to Parts II.A through II.C (Doc. 15, PageID 136–41); **DENIED** CSXT Summary Judgment as to Part II.D of its Motion (*id.* at PageID 142–44); and **DENIED** CSXT's request for stay, which it advanced in Part III of its Summary Judgment Motion (*id.* at PageID 145–48).[2]

Now that Plaintiffs have had the benefit of discovery, and have therefore had an opportunity to properly respond, *see* Doc. 60, CSXT's Motion for Summary Judgment is ripe for review. For the reasons below, CSXT's Motion for Summary Judgment is **DENIED**.

## I.    BACKGROUND

This case arises out of CSXT's investigations into its employees' use of Family Medical Leave Act ("FMLA") leave during the 2017–18 holiday season. In their Complaint, Schobert and York make several allegations on behalf of themselves and fourteen putative classes consisting of current and former CSXT train and engineer employees, all related to those events. *See generally* Doc. 1.

### A.    Schobert and York, Two Locomotive Engineers, Take FMLA Leave Around the 2017–18 Winter Holidays.

CSXT is a rail carrier operating nationwide and employing more than 32,000 people. Doc. 1, ¶ 7. Schobert is, and York was, one of those employees. *Id.* ¶¶ 52, 94. Schobert first joined CSXT in 2003 and has been a locomotive engineer since 2012. *Id.* ¶ 52. York began working with CSXT in 2001 and was a locomotive engineer from 2011 until his termination in 2018. *Id.* ¶ 94. Locomotive engineers are part of a larger group of employees, Train & Engineer Employees ("T&E Employees"), which includes engineers, conductors, and

---

[2] After filing the Motion, CSXT filed a Motion to Transfer Venue (Doc. 38) (the "Transfer Motion"). Plaintiffs filed opposition to the Transfer Motion. *See* Doc. 41. Although the Transfer Motion was fully briefed by the time the Court issued the Opinion and Order on November 30, 2020, the Court had yet to decide whether transfer was warranted. Doc. 46, PageID 760. This Court acknowledges that the Transfer Motion remains pending and intends to give the Transfer Motion due consideration by separate order.

switchmen, all of whom work pursuant to a collective bargaining agreement. *Id*. ¶ 38. Rather than working a typical nine-to-five schedule, T&E Employees are "called up within two hours' notice for multiple-day shifts that include overnight stays[.]" *Id*. ¶ 31. They "do not work a regular workday or Monday through Friday," but are "on call" most hours of most days. *Id*. ¶¶ 12, 31.

For Schobert and York, the on-call nature of their job is complicated by their disability status, which they assert entitles them to intermittent FMLA leave. Doc. 1, ¶¶ 55–56, 97–98. Roughly 11 years ago, Schobert suffered an injury that resulted in a "continuing disability of the spine," allegedly causing him "intermittent neck and back pain." *Id*. ¶¶ 55–56. He also alleges that, during painful flare-ups, he cannot work. *Id*. ¶ 56. York, on the other hand, suffered a knee injury about 10 years ago, which flares up from time to time and allegedly impairs his "ability to walk." *Id*. ¶¶ 97–98. As part of addressing their respective conditions and flare-ups, Schobert and York sought, and they assert CSXT approved, pre-certified intermittent FMLA leave, which permits them time off to seek treatment. *See id*. ¶¶ 57–59, 99–101.

In late December 2017, Schobert experienced a flare-up that allegedly rendered him unable to work, but because it was Christmastime, he could not get an appointment with his doctor until December 26, 2017. Doc. 1, ¶¶ 73–74. Accordingly, he took four days of FMLA leave. *Id*. Separately, York's knee began to cause him problems around New Year's Eve, so he took two days of FMLA leave starting on December 30, 2017. *See id*. ¶¶ 112–13. While neither Plaintiff specifically alleges that he returned to work after his FMLA leave concluded, the Complaint indicates that they both did.

During the first few weeks of 2018, CSXT began investigating whether its employees who took FMLA leave during the winter holidays had done so improperly, *i.e.*, merely to avoid being called into work on those holidays. Doc. 1, ¶ 37. CSXT undertook this broad-sweeping inquiry because, according to a CSXT notice that Plaintiffs cite in their Complaint, the company had noticed "disruptions to its operations on holidays and weekends due to crew unavailability." *Id.* ¶ 24 (purporting to quote a CSXT employee notice). As part of that investigation, in early-to-mid January 2018, CSXT placed both Schobert and York on administrative leave without pay pending a disciplinary hearing on whether they inappropriately used FMLA leave. *See id.* ¶¶ 76–79, 115–17.

Eventually, Schobert and York each had a hearing pursuant to the T&E Employees' collective bargaining agreement with CSXT. Schobert alleges that, at his hearing, CSXT accused him of misusing FMLA leave and lying to his employer. *Id.* ¶ 80. He also claims that CSXT supported its accusation with only minimal evidence, consisting solely of the coincidental timing between his leave and the 2017 Christmas holiday. *Id.* ¶¶ 81–82. Luckily for Schobert, he was "exonerated" because he "happened to bring documentation of his treatment," *i.e.,* the December 26, 2017, medical appointment, to his disciplinary hearing. *Id.* ¶ 85. Without expressly pleading as much, the Complaint suggests that CSXT reinstated Schobert to his pre-leave position, as Schobert does not make any allegation to the contrary or assert that he was subject to additional discipline.

York was not so fortunate. Unlike Schobert, York did not provide any corroborating documents to substantiate his need for FMLA leave. So, at York's hearing, CSXT again cited the coincidental timing between FMLA leave and the holiday season to assert that he had wrongfully taken FMLA leave. *Id.* ¶¶ 118–23. CSXT's belief that York had misused leave led

CSXT to also find that York committed an act of dishonesty, a terminable offense under the T&E Employees' collective bargaining agreement. *Id.* CSXT thus fired York on February 24, 2018. *Id.*

Schobert's disciplinary hearing and York's termination led them to jointly sue CSXT (on behalf of fourteen putative classes of employees). The Complaint generally alleges that CSXT violated: (1) the FMLA (Count I); (2) the Employee Retirement Income Security Act ("ERISA") (Count II); and (3) the Rehabilitation Act (Count III), each in various ways. Doc. 1, PageID 22–24. CSXT attacked each of the three counts on the merits through its combined motion, either by way of judgment on the pleadings or on summary judgment, and also sought a stay of further proceedings to the extent any claims survived (the "Motion"). Doc. 15.

As stated, this Court issued an order ruling partially on CSXT's Motion before the case was transferred to the undersigned. *See* Doc. 46. The Court deferred ruling on the parts of the Motion that are the subject of this Order because CSXT still owed Plaintiffs discovery that could affect the summary judgment ruling. *Id.* at 743. The Court's previous Order "permit[ted] Plaintiffs to supplement their response to CSXT's summary judgment motion, and . . . afford[ed] CSXT an opportunity to supplement its reply" after the Parties "engage[d] in the discovery identified by Plaintiffs' Motion[.]" *Id.* at PageID 744.[3]

**B.    CAPS & Guarantee Policies Explained.**

Plaintiffs allege that CSXT's employment policies that govern workplace attendance and discipline, as well as un/paid leave violate the FMLA. First is CSXT's no-fault

---

[3] Plaintiffs' Motion for Discovery alleges that they initially "agreed to delay service of discovery upon [CSXT] in exchange for [CSXT's] agreement to [a] 30-day extension to respond to [CSXT's] Motion. Doc. 21-1, PageID 260. And therefore, Plaintiffs allege that "in the spirit of cooperation," they had "not conducted discovery as to the claims and defenses underlying [CSXT's] Motion for Summary Judgment." *Id.*

attendance policy, the "Crew Attendance Point System" (hereinafter "CAPS" or "CAPS Policy"). Next is CSXT's "Guarantee Policy" (aka "Guarantee Pay"). The Guarantee Policy involves the administration of income separate from an employee's base compensation (together, the CAPS Policy and Guarantee Policy are the "Policies").

### i. CAPS

Starting with CAPS. CSXT states that the Policy:

> [A]ssesses points to employees for certain absences (but not for FMLA leave), and employees are progressively disciplined each time they reach the 20-point threshold. The policy provides a Good Attendance Credit—the removal of three points from the employee's record—to employees who have not accrued any attendance points in a calendar month, and who have not otherwise been absent from work, except for certain reasons.

Doc. 15-2, PageID 153. Simply put, the CAPS Policy operates on a carrot-and-stick principle. Under this attendance Policy, employees receive points for unexcused absences, and they face disciplinary action once they exceed the 20-point threshold (the stick). However, the Policy reduces an employee's attendance points by three (3) for each calendar month in which they have perfect attendance, meaning no unexcused absences (the carrot).

### ii. Guarantee Policy

The Guarantee Policy (aka Guarantee Pay) is ostensibly more straightforward. CSXT states that under its Guarantee Policy employees are "guaranteed . . . a minimum income provided they are available to work for a certain period of time." Doc. 15-2, PageID 152. In other words, CSXT states that T&E Employees can earn "guaranteed" pay for remaining "on-call" to come in and operate a train, even if they are never actually called to do so. *Id.* [4]

---

[4] According to CSXT, under its Guarantee Policy:

## C.     The Parties' Arguments.

In effect, Plaintiffs' Complaint alleges that CSXT's administration of both Policies impermissibly penalizes employees for utilizing their FMLA leave. *See generally* Doc. 1. Plaintiffs argue that CAPS enables employees to reduce or eliminate accrued points if they have "perfect attendance for one month." Doc. 1, PageID 3. But FMLA leave destroys perfect attendance, and thus precludes any point reduction for that month. *Id.* For example, an employee who takes FMLA leave on June 1st, returns on June 2nd, and does not miss another day that month, would be ineligible for a point reduction. *Id.* The converse is also true. An employee could have perfect attendance for the first 30 days of August, take FMLA leave on August 31st, and therefore be ineligible for a reduction that month too. This means, Plaintiffs argue, that when an employee has "a prior non-FMLA absence" (*i.e.,* negative points already on their record), they are "actively discouraged from taking FMLA" because doing so could ruin otherwise perfect attendance and their chance to earn point reduction. *Id.*

Plaintiffs also take issue with the way that CSXT allocates Guarantee Pay. Plaintiffs allege that if T&E Employees who are "on call" take FMLA leave (thus leaving them "on call" but unable to work if called), then CSXT "strips the engineers of their guarantee pay for an entire week, regardless of whether the employee is actually called to work while on FMLA

---

"[w]hen an employee marks off, it creates a temporary vacancy that must be filled. CSXT's CBAs with T&E employees establish procedures for filling temporary vacancies. The agreements generally require CSXT to first try to fill the temporary vacancy with an employee from an extra board. Extra boards operate similar to pools insofar as the employees assigned to them are placed on a rotating list based on when they last worked, and are called to work in that order. Unlike an employee who works in a pool, however, an extra board employee's primary function is to remain available to fill temporary vacancies. Some extra boards are "guaranteed," meaning that the employees assigned to them are assured a minimum income provided they are available to work for a certain period of time, while other extra boards are not guaranteed."

Doc. 15-2, PageID 152.

leave." Doc. 1, PageID 3. Plaintiffs allege that even after "stripping" this pay, CSXT "still requires the engineers to remain on call for days after the FMLA absence," apparently without pay. *Id.*

CSXT states, in effect, that summary judgment is warranted because its Policies are consistent with Department of Labor regulations. Doc. 15-1, PageID 136–40. Plaintiffs reasserted their Opposition to CSXT's summary judgment Motion after obtaining the discovery sought. *See* Doc. 60. CSXT argues in its supplemental Reply that Plaintiffs impermissibly asserted "entirely new" claims after obtaining the information identified in the motion for discovery. Doc. 65, PageID 4085; Doc. 21-1, PageID 260–61. But that in any event, CSXT argues, both the "new" and "original" claims are meritless. *Id.* at PageID 4085. The Court will first address the "new" arguments raised in Plaintiff's supplemental Opposition, followed by an assessment of the "original" claims. *Compare* Doc. 60 *with* Doc. 1.

## II.    STANDARD OF REVIEW

As stated, CSXT seeks summary judgment. "The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

But the non-moving party cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*,

8

974 F.3d 690, 697 (6th Cir. 2020) (bracket and emphases omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). In other words, the dispute must be "genuine" (*i.e.*, supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

In sum, after reviewing the evidence relied upon by the movant, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## III.  LAW AND ANALYSIS

As stated, CSXT argues that Plaintiffs impermissibly asserted "entirely new" claims in response to its summary judgment Motion. Doc. 65, PageID 4087. But that in any event, CSXT argues, both the "new" and "original" claims are meritless. *Id.* The Court will address the threshold issue of whether it can consider the alleged "new" arguments raised in Plaintiff's supplemental Opposition; and then the Court will evaluate the remaining "original" claims.

### A.  The Court May Consider Each of The Claims Raised in Plaintiffs' Supplemental Opposition.

According to CSXT, Plaintiffs alleged the following, for the first time in their supplemental Opposition: (1) that the Policies treated FMLA leave less favorably than other unpaid forms of leave; (2) that employees must use a paid entitlement to remain fully eligible for Guarantee Pay or CAPS' Good Attendance Credit; and (3) that the Guarantee Policy is

9

"retaliatory" under the FMLA. [5] Doc. 65, PageID 4083. CSXT argues that "these claims were not pled in the Complaint, so they cannot possibly provide a basis to deny summary judgment. And, even if they had been properly pled, the claims fail." *Id.* at PageID 4085.

It is well-settled that "[p]laintiffs cannot raise new claims on appeal . . . [a]nd they cannot assert new claims in response to summary judgment." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020). Equally true, though, the Sixth Circuit has made clear that "a complaint need not set down in detail all the particularities of a plaintiff's claim." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). Rather, parties need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). Courts are thus "required to 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

Indeed, the Federal Rules of Civil Procedure instruct that "**[p]leadings must be construed as to do justice**." Fed. R. Civ. P. 8(e) (emphasis added). Which is to say that contrary to CSXT's assertions, "the Rules require that [courts] not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). Nonetheless, even though "a short and plain statement" is all that is required to survive dismissal at the pleading stage, *Humana, Inc.*, 684 F.3d at 608, "it is all too common a practice for litigants to 'overplead' their cases, presumably

---

[5] *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) ("Although we analyze an FMLA claim based on the interference theory differently from one based on the retaliation theory, notice pleading does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action.")

either to assuage themselves that they are not waiving claims, or as make-weight for the purposes of litigation or settlement posture." *Raineater, LLC v. Jiujiang Yada Traffic Equip. Co.*, No. CIV.A. 13-175E, 2014 WL 4262169, at *1 (W.D. Pa. Aug. 27, 2014).

The Federal Rules of Civil Procedure contemplate over-pleading concerns, which is why they generally do not require litigants to provide excessively detailed allegations in their complaints. *Lillard*, 76 F.3d at 724. Rather, the Rules "provide for liberal notice pleading at the outset of the litigation because '[t]he provisions for discovery are so flexible that, **by the time a case is ready for summary judgment, 'the gravamen of the dispute [has been] brought frankly into the open for inspection by the court**.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (emphasis added) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)) (noting that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims") (citation and quotation marks omitted).

Moreover, a district court may consider claims that are not explicitly mentioned in the pleadings, as long as doing so does not cause any prejudice. *See* Fed. R. Civ. P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings."). In other words, "[i]t is well-settled that the parties may constructively amend the complaint by agreeing, even implicitly, to litigate fully an issue not raised in the original pleadings." *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

In *Vencor Inc. v. Standard Life & Accident Ins. Co.*, the Sixth Circuit reviewed a promissory estoppel claim raised for the first time in opposition to summary judgment, but in

11

that case the district court had reached the argument only after finding that the defendant had been on notice of the plaintiff's claim well before the summary judgment stage. 317 F.3d 629, 641 n. 11 (6th Cir. 2003); *but see Guiffre v. Loc. Lodge No. 1124*, No. 90–3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery.").[6]

Here, Plaintiffs assertion that CSXT is not entitled to summary judgment if it treats equivalent leave statutes more favorably than FMLA leave is properly considered by the Court because the claim is reasonably inferred from Plaintiffs' Complaint. *See* Doc. 1; *see also* Doc. 60, PageID 3942. Plaintiffs allege that "[u]nder the CAPS system points are not removed if the employee does not have perfect attendance because he or she took FMLA leave during that month," Doc. 1, PageID 3, which implies that FMLA leave is penalized in a way that other types of leave may not be. Plaintiffs also allege that if employees are unable to take FMLA leave "in conjunction with other days off, they are forced to choose between taking unprotected time off that results in discipline, foregoing leaving altogether, or unnecessarily depleting their FMLA, vacation, personal, and other leave to ensure enough time to receive treatment." *Id.* at PageID 6. The mention of employees having to deplete their other leave to receive treatment further indicates that FMLA leave is not as favorably treated; it also implies that employees must use other forms of leave alongside FMLA leave. That is, employees must

---

[6] *See New York State Elec. & Gas Corp. v. Secretary of Labor*, 88 F.3d 98, 104 (2d Cir. 1996) ("[A] party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case.")

make difficult choices regarding which leave types must be used to avoid negative consequences. This creates a contrast, suggesting that other leave types might be treated more leniently under the policy.

Furthermore, CSXT's summary judgment Motion indicates, at least partially, that it interpreted Plaintiffs' Complaint to mean CSXT was accused of treating other unpaid leave statutes more favorably than FMLA leave. Indeed, CSXT asserted that its "[G]uarantee rules are fully complaint with the FMLA" because "**CSXT treats unpaid FMLA leave no better and no worse than other equivalent forms of unpaid leave**." Doc. 15-1, PageID 140 (emphasis added). Therefore, even though the claim(s) were not expressly pled, the "[P]arties constructively amend[ed] the [C]omplaint by agreeing . . . implicitly . . . to litigate fully [the] issue" of whether CSXT generally treats unpaid FMLA leave worse than equivalent forms of unpaid leave. *Florence*, 126 F.3d at 872.

Keeping these considerations in mind, the Court will next evaluate each of the arguments raised in Plaintiffs' supplemental Opposition. *See* Doc. 60. For all intents and purposes, the Court finds that Plaintiffs' claims are not "entirely new" as CSXT asserts. Doc. 65, PageID 4087. As stated, the claims result from Plaintiffs obtaining discovery, and therefore having an opportunity to properly respond to CSXT's summary judgment Motion. *See* Doc. 46, PageID 743–44; *see also Henry v. Metropolitan Transp. Auth.,* No. 07 Civ. 3561(DAB), 2014 WL 4783014, at *10 (S.D.N.Y. Sept. 25, 2014) (alteration omitted) ("In contrast, claims that are related to or are mere variations of previously pleaded claims—that is, claims based on the same nucleus of operative facts and similar legal theories as the original claims—may be raised on a motion for summary judgment where the defendant was clearly

13

on notice from the complaint and was not unfairly prejudiced." *Id.* (internal quotation marks omitted).[7]

The Court finds that CSXT was clearly put on notice of each allegedly "new" claim by Plaintiffs' discovery motion and accompanying requests, which were communicated before briefing on the Motion concluded. *See* Doc. 21-1, PageID 260–61. To avoid any doubt about theories upon which the claims were premised, Plaintiffs sought information to refute CSXT's "characterizations of its [CAPS]… [and] Guarantee Polic[ies]." *Id.* Plaintiffs' requests included information regarding "[w]hether [CSXT] treats unpaid FMLA leave no better and no worse than other equivalent forms of unpaid leave"; "[w]hether [CSXT's] [G]uarantee [P]olicy is consistent with DOL regulations"; and whether the "[CAPS] [P]olicy interferes with its employees' FMLA rights." *Id.* Thus, consistent with Plaintiffs' Complaint and permitted discovery requests, the Court will examine both Policies and assess whether CSXT's administration of them violates the FMLA. *See* Docs. 1, 21-1, 60.

## B. Summary Judgment Is Inappropriate Because CSXT's Administration of Both Policies Raises Genuine Issues of Material Fact.

Having found no procedural obstacle to considering Plaintiffs' claims, the Court turns to the merits. As stated, Plaintiffs allege generally that both Policies—at times differently and

---

[7] As stated, this Court's previous Order granted Plaintiffs' discovery motion because the information sought "[had] the potential to change the [summary judgment] ruling[.]" Doc. 46, PageID 743. This Court explained that:

> CSXT attached several affidavits and exhibits to its Motion [for summary judgment], but any information that could refute the contents of those attachments would have been, at that time, in CSXT's possession. **To refute CSXT's summary judgment motion, Plaintiffs will necessarily need to discover what CSXT's FMLA policies were. That is unlikely to occur without the Plaintiffs at least being afforded the opportunity to see a clearer picture of how CSXT operated in order to have a fair chance to refute the company's declarations**.

*Id.* (emphasis added).

at other times, similarly—unlawfully penalize employees for using FMLA leave. *See* Docs. 1, 60. Plaintiffs argue that both Policies violate the FMLA by requiring employees to use a form of paid leave alongside FMLA leave to remain eligible for the Policies' respective benefits Doc. 60, PageID 3941, 3945–46. Plaintiffs also claim that the CAPS Policy violates the FMLA by preventing employees that utilize their FMLA leave from opportunities to earn point reduction. *Id.* at PageID 3939. Finally, Plaintiffs allege that both Policies treat FMLA leave worse than similar forms of unpaid leave.[8] *Id.* at PageID 3942, 3949–50. The Court will address each of the three arguments in turn.

### i.    CSXT is allowed to require their employees to substitute accrued paid leave for unpaid FMLA leave.

Plaintiffs argue that the Policies violate the FMLA because they require employees to exhaust a paid entitlement—like vacation days or another form of paid time off—alongside FMLA leave to remain eligible for the Policies' respective benefits. Doc. 60, PageID 3945–46. Plaintiffs assert that the requirement is impermissible because T&E Employees returning from FMLA leave are not "reinstated to [their] position or to a position equivalent in pay, benefits, and other terms and conditions of employment," as required by the FMLA. *Id.* (citing 29 U.S.C. § 2614(a)(1)). In other words, Plaintiffs argue that CSXT violates the FMLA every time a T&E Employee must simultaneously exhaust their paid leave in order to not be disqualified from point reduction opportunities under CAPS or from earning their entire Guarantee Pay. Doc. 60, PageID 3942, 3945–46.

---

[8] The Court finds that Plaintiffs' additional argument is essentially an extension of their general claim that the Policies favor other forms of unpaid leave over FMLA leave. Plaintiffs contend that the Guarantee Policy is "retaliatory" under the FMLA because CSXT reduces the Guarantee Pay of employees on FMLA leave more than it does for those on other types of unpaid leave. Doc. 60, PageID 3947–49.

But Plaintiffs' argument ignores the plain language of the relevant FMLA regulation, which states that "**an employer may require the employee to substitute accrued paid leave for unpaid FMLA leave**. The term substitute means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid FMLA leave." 29 C.F.R. § 825.207(a) (emphasis added). Indeed, the Department of Labor squarely addresses this issue under its FMLA frequently asked questions: "**the law permits . . . the employer to require the employee, to use accrued paid vacation leave, paid sick or family leave for some or all of the FMLA leave period**." (emphasis added).[9] CSXT therefore does not violate the FMLA by requiring employees to substitute accrued paid leave for FMLA leave.[10]

> ii.    **CSXT's CAPS Policy violates the FMLA by depriving employees utilizing FMLA leave of the opportunity to earn Good Attendance Credits.**

Plaintiffs argue that the CAPS Policy violates the FMLA by preventing employees who avail themselves of FMLA leave from opportunities to earn point reduction. Doc. 60, PageID 3939. CSXT argues that its CAPS Policy does not violate the FMLA because it "does not assess any [negative] points to employees who take FMLA leave" and "absenteeism forgiveness is a benefit that an employee must earn – not one that must be provided to employees on FMLA leave." Doc. 15-1, PageID 137. While CSXT's statements may be true, that is not the relevant inquiry.

---

[9] DEP'T OF LABOR, https://www.dol.gov/agencies/whd/fmla/faq (last visited Aug. 27, 2024).

[10] *See also* 29 C.F.R. § § 825.215(d)(2) ("[an] employee may, but is not entitled to, accrue any additional benefits or seniority during unpaid FMLA leave. Benefits accrued at the time leave began, however, (e.g., paid vacation, sick or personal leave **to the extent not substituted for FMLA leave**) must be available to an employee upon return from leave.") (emphasis added).

16

"The FMLA enables employees covered by the Act to take up to twelve weeks of leave per year for various purposes specified in the statute, including the employee's own 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 569–70 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)). "At the expiration of the employee's leave period, [he] must be reinstated to [his] position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Id.* (citing 29 U.S.C. § 2614(a)(1)). "Consistent with [this] prescription, [e]mployers may not discriminate against employees on FMLA leave in the administration of their paid leave policies." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) (quoting 29 C.F.R. § 825.207(a)). An employer is prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1). An employer who violates the FMLA is liable to the employee for damages. *Hunter v. Valley View Loc. Schs.*, 579 F.3d 688, 691 (6th Cir. 2009) (citing 29 U.S.C. § 2617(a)(1)).

The Sixth Circuit recognizes "two discrete theories of recovery under the FMLA: (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Seeger*, 681 F.3d at 282. Plaintiffs have lodged their claims under the 'interference' theory in § 2615(a)(1), which "has its roots in the FMLA's creation of substantive rights." *Id.* Under this theory, "a violation has occurred if an employer interferes with the FMLA-created right to medical leave or to reinstatement following leave, regardless of the intent of the employer." *Id.* (citing *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). "It is considered interference for purposes of the Act for employers to use the taking of FMLA leave as a negative factor in

employment actions." *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475–76 (6th Cir. 2019) (citing 29 C.F.R. § 825.220(c)).

In its Motion, CSXT relies heavily on *Dyer v. Ventra Sandusky, LLC*, 317 F. Supp. 3d 953 (N.D. Ohio 2018). In that case, an employee filed an FMLA lawsuit challenging an attendance policy that enabled workers to reduce their negative attendance points by maintaining perfect attendance for 30 consecutive days. *Id.* at 955.[11] Under the policy, if an employee had 5 days of perfect attendance but then took 3 days of unpaid FMLA leave, they would forfeit the 5 days they had accumulated. *Id.* By contrast, if the same employee took 3 days of paid vacation instead of FMLA leave, they would return to work with a total of 8 days of perfect attendance. *Id.*

Time off for vacation, bereavement, jury duty, military duty, union leave, and holidays counted towards the 30-day threshold, *i.e.*, such absences did not stop or "reset" the 30-day clock; but time off for FMLA leave did. *Dyer,* 934 F.3d at 474. The district court nevertheless found the policy lawful because "FMLA leave only interrupts the process for removing points, and an employer does not violate the Act by withholding a benefit that an employee on FMLA leave has not earned." *Dyer*, 317 F. Supp. 3d at 960. CSXT argues in its Motion that "the same reasoning applies here" because its CAPS Policy "is virtually the same as the employer attendance policy in *Dyer*." Doc. 15-1, PageID 137. As such, CSXT contends that "the fact that employees who use FMLA leave are not eligible for the Good Attendance Credit does not violate the FMLA." *Id.* But the Sixth Circuit disagrees.

---

[11] CSXT also relies on another non-binding case from the Seventh Circuit, *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 750–51 (7th Cir. 2010).

As Plaintiffs' supplemental Opposition correctly points out, the "Sixth Circuit rejected the district court's logic [in *Dyer*], stating plainly that 'denying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave.'" Doc. 60, PageID 3940 (quoting *Dyer*, 934 F.3d at 475–76). CSXT's supplemental Reply, ironically, employed the tactic it dogmatically (but wrongly) accused Plaintiffs of adopting: "switch[ing] horses."[12] Doc. 65, PageID 4085. Indeed, in a dizzying attempt to reverse script, CSXT abandoned reliance on the *Dyer* district court decision because the policy at issue dealt with "the accrual of perfect attendance credit on a rolling basis, unlike [the CAPS] policy." *Id.* at PageID 4097. CSXT now argues that "[b]y contrast, under [CAPS]…perfect attendance credit does not *accrue*, but, rather, is awarded on a binary, 'either/or' basis at the end of each month." *Id.* at PageID 4098 (emphasis added). CSXT now asserts that "*Dyer* is distinguishable" because under CAPS "[t]here is no 'in between,' like there was under the attendance policy in *Dye*r, where perfect attendance days accrued on a *rolling basis*." *Id.* (emphasis added). The Court finds CSXT's argument semantical.

The point remains irrespective of CSXT's obfuscatory characterizations of its own Policy: Much like the policy rejected by the Sixth Circuit in *Dyer*, under CAPS, Good Attendance Credit, *i.e.*, point reduction, is not awarded unless an employee has accumulated the requisite number of consecutive days without a disqualifying absence—including no FMLA leave.[13] As the Sixth Circuit explained when it reversed the *Dyer* district court decision:

---

[12] The Sixth Circuit reversed the *Dyer* district court decision after CSXT filed its Motion for summary judgment. *See* Doc. 15-1; *Compare* 934 F.3d 472 *with* 317 F. Supp. 3d 953. CSXT subsequently abandoned its reliance on the district court's order. *See* Doc. 65.

[13] To be sure, the Sixth Circuit rejected a similar argument made by the defendant in *Dyer*:

"**attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights**." 934 F.3d at 476–77 (emphasis added) (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)).

Plaintiffs here, like the plaintiff in *Dyer*, are "forc[ed] . . . to choose between taking needed FMLA leave and enjoying the bargained-for terms of [their] employment relationship," which "improperly interfere[s] with [their] FMLA rights." 934 F.3d at 476–77. Indeed, the Sixth Circuit emphasized that "[a]lthough the policy here does not formally hinge point reduction on not taking FMLA leave, the practical result is the same for someone like *Dyer* [and Plaintiffs Schobert and York] who must take frequent intermittent FMLA leave." *Id.* Plainly, Plaintiffs' Complaint, which predated the Sixth Circuit *Dyer* decision, stated that CSXT "chilled employees' use of intermittent leave[,]" and "caused [employees] not to use FMLA leave when they needed it" just to remain eligible for the Good Attendance Credit. Doc. 1, PageID 11, 16.

As Plaintiffs also point out, CAPS is *more* restrictive than the *Dyer* policy because the Good Attendance Credit is contingent on a *calendar month's* perfect attendance by the employee. Doc. 60, PageID 3941. That is, if an employee took FMLA leave on the first day of one month and the last day of the following month, they could have perfect attendance for almost 60 days but still not receive any point reduction under CAPS. That makes little sense

---

[Defendant] argues that until an employee has reached the 30-day mark, he has accrued no benefit—benefit being the actual reduction of an absence point—so there can be no benefit to be restored upon returning. [Defendant's] reading would allow employers to discourage FMLA leave by creating high thresholds for point reduction that could never realistically be met by anyone taking such leave. For these reasons, a jury could find that [Defendant's] policy interfered with Dyer's FMLA rights by not freezing the accrual of perfect attendance during his leave."

934 F.3d at 477–78.

when by contrast, under the *Dyer* scheme, that same employee would have nearly two points forgiven. *See Dyer*, 934 F.3d at 478 ("In two separate opinion letters, the most recent of which was issued in August 2018, the Department of Labor applied these regulations to no-fault attendance and point-reduction policies and stated that accrual toward point reduction must, at the very least, be frozen during FMLA leave.")

At bottom, CSXT "interfere[s] with . . . [and] restrain[s]" T&E Employees' right to take intermittent FMLA leave by denying them the chance to earn Good Attendance Credits while they are on that particular leave. 29 U.S.C. § 2615(a)(1). A jury could find that CSXT's no-fault point-reduction scheme interfered with T&E Employees' right to take FMLA leave and to be restored to an equivalent position with equivalent benefits and other terms and conditions of employment upon return to work. A jury could also find that, by not restoring T&E Employees' perfect attendance clock after they returned to work from taking FMLA leave, CSXT failed to restore accumulated employment benefits as required by the FMLA. 29 U.S.C. § 2614(a)(1)). The Court therefore **DENIES** CSXT's Motion for summary judgment. *Dyer*, 934 F.3d at 478. (Count I).

### iii. CSXT's Policies violate the FMLA if they treat equivalent leave statutes more favorably than FMLA leave.

Plaintiffs also argue that the CAPS Policy violates the FMLA because, unlike FMLA leave, two other types of unpaid leave do not prevent employees from earning the Good Attendance Credit. Doc. 60, PageID 3942. As for the Guarantee Policy, Plaintiffs allege that employees using FMLA leave have a higher percentage of their Guarantee Pay deducted compared to three other forms of unpaid leave. *Id.* at PageID 3950. CSXT argues that the other unpaid leaves cited by Plaintiffs are not comparable because "[e]quivalency does not

turn solely on whether leave is paid or unpaid"; thus, CSXT contends, it can "lawfully treat them differently than FMLA leave." Doc. 65, PageID 4088.

a. **CAPS**

Plaintiffs again rely on the Sixth Circuit *Dyer* decision and argue that CSXT treats at least two forms of unpaid leave more favorably than FMLA leave under CAPS. Doc. 60, PageID 3943; *Dyer,* 934 F.3d at 478. CSXT maintains, on the other hand, that *Dyer* did not hold that equivalency turned on whether leave was paid or unpaid, but "merely suggested in dicta that the regulations 'imply' that whether leave is paid or unpaid could be determinative of equivalency[.]" Doc. 65, PageID 4088–89. CSXT adds that the Sixth Circuit "drew this implication from an example in a different regulation—29 CFR § 825.220(c)—that does not include the term 'equivalent leave status' (or any form of the word 'equivalent' for that matter.)" *Id.* CSXT then points the Court to 29 C.F.R. § 825.215(c), which it contends "read as a whole, makes clear that equivalency means 'virtually identical,' 'substantially similar,' or close to the 'same.'" *Id.* But in this Court's view, CSXT's reading of the regulations flouts at their meaning and mischaracterizes the Sixth Circuit's decision in *Dyer.* 29 C.F.R. § 825.220(c); *Dyer*, 934 F.3d at 478.

The Sixth Circuit in *Dyer* unambiguously held that "[Defendant] is not entitled to summary judgment if FMLA leave is treated less favorably than other equivalent leave statuses." 934 F.3d at 478. The Court found that there was a disputed issue of material fact as to what constitutes "equivalent" leave under the defendant's no-fault attendance policy. *Id.* The Court explained that:

> Although neither the FMLA nor its implementing regulations define 'equivalent leave status,' the regulations imply that equivalency turns on whether the leave is paid or unpaid. For example, in describing the equivalency principle, the regulations state that "if an employee **on leave without pay**

22

would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee **on unpaid FMLA leave**. *See* 29 C.F.R. § 825.220(c) (emphasis in original).

At her deposition, **[Defendant's] employee . . . stated that under the collective bargaining agreement, active-duty military leave and some forms of union leave are both unpaid leave and yet, unlike FMLA leave, they do not restart the 30-day point-reduction clock. At the very least, then, it is a disputed issue of material fact whether active military leave and some forms of union leave are equivalent unpaid leave statuses that are treated more favorably than FMLA leave** (emphasis added).

*Id.*

Applying this same logic, the result reached here is no different from the one in *Dyer*. CSXT concedes that its CAPS Policy does not disqualify two other forms of unpaid leave from earning Good Attendance Credit: (1) "Demand Days Off" and (2) time off for a "work-related injury or illness." Doc. 65, PageID 4092. From this Court's vantage point, it is simply unconscionable that employees who are absent due to a "work-related injury or illness" remain eligible for the Good Attendance Credit but those on FMLA leave do not. CSXT implies that time-off for a work-related injury or illness has nothing "in common with FMLA leave," and states that "Plaintiffs [could not] establish equivalency if they tried." *Id.* But even a charitable review of CSXT's argument strains credulity.

CSXT states that "employees who are off work due to a work-related injury or illness and whose absence is substantiated by a valid doctor's note remain eligible for the Good Attendance Credit." Doc. 65, PageID 4095. But as mentioned above, as part of addressing their respective conditions and flare-ups, Schobert and York sought, and they assert CSXT approved, pre-certified intermittent FMLA leave, which permits them time off to seek medical treatment. *See supra,* Section I.A.

23

Indeed, Schobert alleges that his "disability causes . . . intermittent neck and back pain that renders him temporarily unable to perform his job during the flareups." Doc. 1, PageID 9. He also alleges that he is "required to see his medical provider regularly to assess and treat his disability"; and that he "requested intermittent FMLA leave for the periods where he was unable to perform his job and to seek assessment and treatment, and CSX approved the request." *Id.* The same is true for York, who alleges that his "disability caused . . . intermittent knee pain that rendered him temporarily unable to perform his job during the flareups." *Id.* at PageID 15. And that he, too, was "required to see his medical provider regularly to assess and treat his disability"; and that he "requested intermittent FMLA leave for the periods where he was unable to perform his job and to seek assessment and treatment, and CSX approved the request." *Id.*

In light of the above, the Court cannot reconcile (or more precisely, there is a disputed issue of material fact as to) how a work-related injury or illness has nothing "in common with FMLA leave." Doc. 65, PageID 4092. To be clear, however, 29 C.F.R. § 825.220(c) explicitly states: "[b]y the same token, **employers cannot use the taking of FMLA leave as a negative factor in employment actions**, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies. *See* 29 C.F.R. § 825.215." (emphasis added). As a result, the Court **DENIES** CSXT's Motion for summary judgment. Doc. 15-1. (Count I).

### b.   Guarantee Policy

Finally, CSXT argues that its Guarantee Policy (aka Guarantee Pay) is "specifically sanctioned" by 29 C.F.R. § 825.215(c). Doc. 65, PageID 4099. To begin, the Parties disagree over how to categorize Guarantee Pay under the FMLA. Plaintiffs allege that, like the CAPS

Good Attendance Credit and the attendance credit in *Dyer*, Guarantee Pay is an employment benefit under 29 C.F.R. § 825.215(d). Doc. 60, PageID 3945.[14] CSXT counters that it is a bonus or other payment based on the achievement of a specified goal under 29 C.F.R. § 825.215(c). Doc. 65, PageID 4099. The Court finds that Guarantee Pay is more like a payment based on the achievement of a specified goal under 29 C.F.R. § 825.215(c), and therefore, CSXT may deny the payment to those who have not attained the goal due to FMLA leave. *Id.* However, that does not resolve the dispute at hand. The issue is whether the Guarantee Policy violates the FMLA by discriminating against FMLA users relative to persons who utilize other equivalent leave statuses.

The FMLA defines "employment benefits" expansively to mean "all benefits provided or made available to employees by an employer" including health insurance, paid vacation, sick leave, and pensions "regardless of whether provided by practice or written policy." *See* 29 C.F.R. § 825.215(d). By contrast, § 825.215(c)(2) states that "if a bonus or other payment is based on the achievement of a specified goal such as hours worked, products sold or perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, **unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave**." (emphasis added). On the one hand, as Plaintiffs argue, Guarantee Pay resembles a benefit, similar to other employee benefits like health insurance, paid vacation, or sick leave, because it is a form of financial security offered to employees regardless of whether they actually perform work during that period. On the

---

[14] "Based on the language of the Act and the Department of Labor regulations, point reduction can be viewed as an employment benefit, the accrual of which, like the accrual of other benefits or seniority, must be available to an employee upon return from leave. *See* 29 U.S.C. § 2614(a)(2)." *Dyer*, 934 F.3d at 477.

other hand, as CSXT argues, the requirement that the employee be available to work aligns with the idea of a payment based on the achievement of a specified goal, similar to how a bonus might be tied to meeting specific criteria like hours worked or perfect attendance.

CSXT's problem is that, even using its preferred definition under 29 C.F.R. § 825.215(c), its Guarantee Policy discriminates against FMLA users because it deducts more Guarantee Pay from employees on unpaid FMLA leave than from those on other forms of unpaid leave.[15] CSXT attempts to legitimize its Guarantee Policy by pulling a sleight of hand, arguing that "employees will earn their *full* guarantee only if they are available when called, and have not marked off or otherwise taken *any type* of unpaid leave." Doc. 15-1, PageID 140 (emphasis added). But again, while that statement may be true, that is not the relevant inquiry.

CSXT's supplemental Reply, again ironically, cited the proper consideration, which the Department of Labor explained:

> [I]f an employer policy does not disallow an attendance bonus to an employee who takes vacation leave, the employer cannot deny the bonus to an employee who takes vacation leave for an FMLA purpose (*i.e.*, substitutes paid vacation leave for FMLA leave). **However, if an employer's policy is to disqualify all employees who take leave without pay from such bonuses or awards, the employer may deny the bonus to an employee who takes unpaid FMLA leave**.

---

[15] Again, according to CSXT, under its Guarantee Policy:

> "When an employee marks off, it creates a temporary vacancy that must be filled. CSXT's CBAs with T&E employees establish procedures for filling temporary vacancies. The agreements generally require CSXT to first try to fill the temporary vacancy with an employee from an extra board. Extra boards operate similar to pools insofar as the employees assigned to them are placed on a rotating list based on when they last worked and are called to work in that order. Unlike an employee who works in a pool, however, an extra board employee's primary function is to remain available to fill temporary vacancies. Some extra boards are "guaranteed," meaning that the employees assigned to them are assured a minimum income provided they are available to work for a certain period of time, while other extra boards are not guaranteed."

Doc. 15-2, PageID 152.

73 Fed. Reg. 67934, 67985; Doc. 65, PageID 4091–92 (emphasis added).

CSXT asserts that its Guarantee Policy "does not discriminate against employees for using leave under the FMLA, but applies across-the-board to all employees who take noncompensated leave[.]" Doc. 15-1, PageID 140. However, CSXT admits that if an employee takes noncompensated FMLA leave on the weekend and misses work, she loses half of her two-week Guarantee Pay as a penalty (*i.e.*, 7 out of 14 days). *See* Doc. 60-4, PageID 4004–09; Doc. 53, PageID 810. And yet, if the same employee takes any other available noncompensated leave (*e.g.*, a Demand Day Off, unpaid short-term Military leave, or unpaid Union Business during the weekend and misses work) she loses only one day of her two-week Guarantee Pay period (*i.e.*, 1 out of 14 days). *Id.* In other words, CSXT **does not** disqualify all employees who take leave without pay from its Guarantee Policy, and those exercising FMLA leave are dealt a *much harsher* penalty—seven times worse—than those taking other types of unpaid leave. *Id.*

CSXT tries to distinguish its unpaid Demand Day Off, unpaid short-term Military leave, and unpaid Union Business as non-equivalent leave statuses, thereby permitting their less severe penalties compared to FMLA leave. Doc. 65, PageID 4092–96. But as the Sixth Circuit explained in *Dyer*, the regulations do not define equivalent leave statuses, so there is a disputed issue of material fact as to what constitutes "equivalent" leave under CSXT's Guarantee Policy. 934 F.3d at 478. To be sure, like CSXT here, in *Dyer*, the "[Defendant's] employee . . . stated that . . . **active-duty military leave and some forms of union leave are both unpaid leave** and yet, unlike FMLA leave, they do not restart the 30-day point-reduction clock. **At the very least, then, it is a disputed issue of material fact whether active military**

leave and some forms of union leave are equivalent unpaid leave statuses that are treated more favorably than FMLA leave." *Id.* (emphasis added).

For clarity, the Court considers Guarantee Pay as an "other payment" under 29 C.F.R. § 825.215(c)—based on the achievement of CSXT's specified goal of employees remaining available to fill temporary vacancies. Therefore, contrary to Plaintiffs' claim, requiring employees who use FMLA leave to forfeit a week's Guarantee Pay does not automatically violate the FMLA. Doc. 60, PageID 3947–49. However, that other forms of unpaid leave receive more Guarantee Pay than unpaid FMLA leave, raises, at the very least, a genuine issue of material fact concerning equivalency under the Policy. Thus, after carefully reviewing the evidence presented by the parties, the Court finds there to be a "sufficient disagreement" that necessitates submitting this matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).[16]

## IV.   CONCLUSION

For the reasons stated, the Court **DENIES** the Motion for Summary Judgment of Defendant CSXT (Doc. 15-1) (Count I).

**IT IS SO ORDERED.**

November 15, 2024

Jeffery P. Hopkins
United States District Judge

---

[16] It is not lost on the Court that the regulation does not state that all employees who are denied an "other payment" must be denied in the same manner. *See* 29 C.F.R. § 825.215(c). That is, CSXT could reasonably argue that because the plain language of the regulation permits the denial of Guarantee Pay to those who fail to achieve the specified goal of being available when called, the fact that all noncompensated leaves experience some form of pay reduction constitutes "denial" broadly; thus, the Policy is consistent with the regulations. *Id.* The Court's review of the regulations and case law revealed no answer or precedent for this question. Again, while that argument would not be without merit, it still would not warrant summary judgment for CSXT because, by definition, the question presents a genuine dispute over a material fact. Which is to say that it is at least not obvious to this Court that under the circumstances described herein, that CSXT is not required to reduce pay equally. Thus, there would still be a "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore*, 8 F.3d at 340 (quoting *Anderson*, 477 U.S. at 251–52).

28